No. 22-20540

---

In the United States Court of Appeals
for the Fifth Circuit

---

**D.L. Markham DDS, MSD, Incorporated 401(k) Plan;
D.L. Markham, DDS, MSD, Incorporated, as plan administrator,**

*Plaintiffs–Appellants,*

*v.*

**Variable Annuity Life Insurance Company;
VALIC Financial Advisors, Incorporated,**

*Defendants–Appellees.*

---

On appeal from the United States District Court
for the Southern District of Texas

---

**Appellees' Brief of
The Variable Annuity Life Insurance Company and
VALIC Financial Advisors, Inc.**

---

David T. McDowell
MᴄDowᴇʟʟ Hᴇᴛʜᴇʀɪɴɢᴛᴏɴ LLP
1001 Fannin St., Suite 2400
Houston, Texas 77002
Telephone: 713-337-5580

Charan M. Higbee
MᴄDowᴇʟʟ Hᴇᴛʜᴇʀɪɴɢᴛᴏɴ LLP
1999 Harrison Street, Suite 2050
Oakland, California 94612
Telephone: 510-628-2145

James M. Chambers
MᴄDowᴇʟʟ Hᴇᴛʜᴇʀɪɴɢᴛᴏɴ LLP
1000 Ballpark Way, Suite 209
Arlington, Texas 76006
Telephone: 817-631-7561

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Case No. 22-20540, *D.L. Markham DDS, MSD, Incorporated 401(k) Plan, et al. v. Variable Annuity Life Insurance Company, et al*.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs/Appellants:**

D.L. Markham DDS, MSD, Incorporated 401(k) Plan

D.L. Markham, DDS, MSD, Incorporated, as plan administrator

**Counsel for Plaintiffs/Appellants:**

Chris Baker
Robert A. Dolinko
Baker Curtis & Schwartz, PC
1 California Street, Suite 1250
San Francisco, California 94111

David F. Crutcher
Law Office of David F. Crutcher
790 Mission Street
San Rafael, California 94901

John S. Edwards, Jr.
Ajamie LLP
711 Louisiana Street, Suite 2150
Houston, Texas 77002

**Defendants/Appellees:**

The Variable Annuity Life Insurance Company

VALIC Financial Advisors, Inc.

**Defendant:**

VALIC Retirement Services Company

**Counsel for Defendants/Appellees, Defendant:**

David T. McDowell
MCDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2700
Houston, Texas 77002

Charan M. Higbee
MCDOWELL HETHERINGTON LLP
1999 Harrison Street, Suite 2050
Oakland, California 94612

James M. Chambers
MCDOWELL HETHERINGTON LLP
1000 Ballpark Way, Suite 209
Arlington, Texas 76011

**Other Interested Persons or Entities**

American International Group, Inc.
　　　American International Group, Inc. is a publicly held corporation that
　　　owns more than 10% of the stock of Defendant/Appellee The Variable
　　　Annuity Life Insurance Company, which in turn owns
　　　Defendant/Appellee VALIC Financial Advisors, Inc. and Defendant
　　　VALIC Retirement Services Company as wholly-owned subsidiaries.

By:   */s/ David T. McDowell*
　　　　　David T. McDowell
　　　　　Attorney of Record for Appellees

## STATEMENT REGARDING ORAL ARGUMENT

The district court's dismissal of Plaintiffs' ERISA claims was required by unambiguous statutory text and is consistent with all circuit-level authority addressing the issue. Accordingly, oral argument is unnecessary because the facts and legal arguments can be adequately presented in the briefs and record. However, if the Court believes oral argument would aid the decisional process, Appellees request an opportunity to participate.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

ISSUES PRESENTED FOR REVIEW ................................................................1

INTRODUCTION .................................................................................................2

STATEMENT OF THE CASE...............................................................................3

I.    The Plan was established in 2017 to provide retirement benefits to the
      employees of the Named Fiduciary's dental practice. ...................................3

II.   The Named Fiduciary first approached VALIC in 2018 seeking services for
      the Plan...........................................................................................................4

III.  VALIC and the Named Fiduciary enter into two contracts. .............................4

      A.   The Named Fiduciary selected the annuity to provide investment options
           to Plan participants. ..................................................................................5

      B.   The service provider agreement outlined the services VALIC would—
           and would not—perform in connection with the annuity. .........................7

IV.   The Named Fiduciary terminates the annuity and triggers the surrender
      charge. ...........................................................................................................9

V.    Procedural History.........................................................................................9

      A.   Plaintiffs file suit in the Eastern District of California alleging that the
           surrender charge violates ERISA. .............................................................9

      B.   The Eastern District of California entered a scheduling order and then
           transferred the case to the Southern District of Texas. ...........................11

      C.   The district court dismissed some of Plaintiffs' claims by agreement, and
           the rest pursuant to Rule 12(b)(6)...........................................................11

SUMMARY OF THE ARGUMENT ....................................................................13

ARGUMENT ......................................................................................................15

I.    Overview: Plaintiffs' claims undermine the public policies behind ERISA. ..15

II.   Issue 1: Plaintiffs' fiduciary-breach claim fails because VALIC was not a
      fiduciary........................................................................................................18

III.  Issues 2, 3, and 5: Plaintiffs' prohibited transaction claim fails for three
      independent reasons. ........................................................................... 25

      A.  Issue 2: VALIC was not a party in interest when the annuity was issued.
          .......................................................................................................... 25

          1.  ERISA's unambiguous definition of "party in interest" did not include
              VALIC when the annuity took effect. .................................................. 26

          2.  The district court's interpretation is supported by Supreme Court
              precedent and all circuit-level authority to consider the issue. ........... 28

          3.  The non-textual arguments advanced by the Plaintiffs and the
              Secretary cannot override unambiguous statutory text. ...................... 31

      B.  Issue 3: VALIC was not involved in a prohibited transaction. ................ 36

      C.  Issue 5: The Court can affirm on the alternative ground that Plaintiffs
          seek impermissible legal relief. .................................................................. 39

IV.   Issue 4: The district court did not abuse its discretion by denying leave to
      amend. .................................................................................................... 42

CONCLUSION ...................................................................................................... 44

CERTIFICATE OF COMPLIANCE ........................................................................ 44

# TABLE OF AUTHORITIES

**Cases**

*Aetna Health Inc. v. Davila*
  542 U.S. 200 (2004) .........................................................................17

*Alaniz v. Zamora-Quezada*
  591 F.3d 761 (5th Cir. 2009)..................................................... 25, 26, 36

*Albert v. Oshkosh Corporation*
  47 F.4th 570 (7th Cir. 2022) .............................................................35

*Am. Fed'n of Unions v. Equitable Life Assur. Soc'y*
  841 F.2d 658 (5th Cir. 1988)..................................................... 17, 19, 23

*Ashcroft v. Iqbal*
  129 S. Ct. 1937 (2009) .....................................................................37

*Belt v. EmCare, Inc.*
  444 F.3d 403 (5th Cir. 2006)..............................................................34

*Braden v. Wal-Mart Stores Inc.*
  590 F. Supp. 2d 1159 (W.D. Mo. 2008) .............................................31

*Braden v. Wal-Mart Stores, Inc.*
  588 F.3d 585 (8th Cir. 2009)..............................................................31

*Cargill v. Garland*
  57 F.4th 447 (5th Cir. 2023) ..............................................................34

*Central States, Se. & Sw. Areas Health & Welfare Fund v. Health Special Risk, Inc.*
  756 F.3d 356 (5th Cir. 2014)..................................................... 40, 41, 42

*Chamber of Commerce of United States of America v. United States Department of Labor*
  885 F.3d 360 (5th Cir. 2018)..............................................................34

*Chavez v. Plan Benefit Services, Inc.*
  No. AU-17-CA-00659-SS, 2018 WL 6220119 (W.D. Tex. Sept. 12, 2018)  16, 38

*Cinel v. Connick*
  15 F.3d 1338 (5th Cir. 1994)..............................................................43

*Collins v. Morgan Stanley Dean Witter*
  224 F.3d 496 (5th Cir. 2000)................................................................5

*Coop. Ben. Adm'rs, Inc. v. Ogden*
  367 F.3d 323 (5th Cir. 2004) .................................................................42

*Cruson v. Jackson Nat. Life Ins. Co.*
  954 F.3d 240 (5th Cir. 2020) .................................................................20

*Cunningham v. Circle 8 Crane Servs., L.L.C.*
  No. 22-50170, 2023 WL 2624692 (5th Cir. Mar. 24, 2023) .................. 25, 26, 36

*Danza v. Fidelity Management Trust Co.*
  533 F. App'x 120 (3d Cir. 2013) ........................................... 19, 30, 36

*Davis v. A.G. Edwards & Sons, Inc.*
  823 F.2d 105 (5th Cir. 1987) .................................................................37

*Depot, Inc. v. Caring for Montanans, Inc.*
  915 F.3d 643 (9th Cir. 2019) ................................................. 19, 20, 21, 22

*Deutsch v. Annis Enterprises, Incorporated*
  882 F.3d 169 (5th Cir. 2018) .................................................................41

*F.H. Krear & Co. v. Nineteen Named Trs.*
  810 F.2d 1250 (2d Cir. 1987) .................................................................19

*Ferrer v. Chevron Corp.*
  484 F.3d 776 (5th Cir. 2007) ................................................. 33, 34, 42

*Great-W. Life & Annuity Ins. Co. v. Knudson*
  534 U.S. 204 (2002) .................................................................40

*Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*
  530 U.S. 238 (2000) ........................................... 25, 26, 29, 35

*Hecker v. Deere & Co.*
  556 F.3d 575 (7th Cir. 2009) .................................................................19

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*
  751 F.3d 740 (6th Cir. 2014) .................................................................23

*Hollis v. Lynch*
  827 F.3d 436 (5th Cir. 2016) .................................................................30

*JPMorgan Chase Severance Plan v. Romo*
  No. H-21-1685, 2021 WL 4442519 (S.D. Tex. Sept. 28, 2021) ..........................40

*Langbecker v. Elec. Data Sys. Corp.*
  476 F.3d 299 (5th Cir. 2007) .................................................................34

*Lockheed Corp. v. Spink*
  517 U.S. 882 (1996) ................................................. 16, 26, 29, 30, 35

*Matter of Kosadnar*
  157 F.3d 1011 (5th Cir. 1998)..................................................................38

*McCaffree Financial Corp. v. Principal Life Insurance Co.*
  811 F.3d 998 (8th Cir. 2016)...................................................................19

*Mertens v. Hewitt Associates*
  508 U.S. 248 (1993) ................................................................ 16, 17, 39

*Mississippi Poultry Ass'n, Inc. v. Madigan*
  31 F.3d 293 (5th Cir. 1994)....................................................................32

*Moore v. New York Cotton Exch.*
  270 U.S. 593 (1926) ...............................................................................38

*NewCSI, Inc. v. Staffing 360 Sols., Inc.*
  865 F.3d 251 (5th Cir. 2017)................................................... 25, 26, 36

*Peel & Co. v. The Rug Mkt.*
  238 F.3d 391 (5th Cir. 2001)..................................................................43

*Pegram v. Herdrich*
  530 U.S. 211 (2000) ...............................................................................18

*Peters v. Aetna Inc.*
  2 F.4th 199 (4th Cir. 2021) ..................................................... 30, 36, 38

*Ramos v. Banner Health*
  1 F.4th 769 (10th Cir. 2021) ......................................................... 30, 36

*Reich v. Rowe*
  20 F.3d 25 (1st Cir. 1994) ............................................................ 16, 24

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*
  786 F.3d 510 (7th Cir. 2015)..................................................................42

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*
  768 F.3d 284 (3d Cir. 2014)........................................................... 19, 36

*Santomenno v. Transamerica Life Ins. Co.*
  883 F.3d 833 (9th Cir. 2018).................................................... 17, 19, 36

*Schaeffler v. United States*
  889 F.3d 238 (5th Cir. 2018)..................................................................28

*Sellers v. Anthem Life Ins. Co.*
  316 F. Supp. 3d 25 (D.D.C. 2018) .......................................... 16, 18, 34

*Shell v. Burlington N. Santa Fe Ry. Co.*
  941 F.3d 331 (7th Cir. 2019)..................................................................28

*State v. United States Env't Prot. Agency*
  983 F.3d 826 (5th Cir. 2020)................................................................28

*Sweda v. Univ. of Pennsylvania*
  923 F.3d 320 (3d Cir. 2019)................................................................30

*Teets v. Great-W. Life & Annuity Ins. Co.*
  921 F.3d 1200 (10th Cir. 2019)...........................................................40

*Tiblier v. Dlabal*
  743 F.3d 1004 (5th Cir. 2014).............................................................22

*Vaz Borralho v. Keydril Co.*
  710 F.2d 207 (5th Cir. 1983)...............................................................32

*Waller v. Hanlon*
  922 F.3d 590 (5th Cir. 2019).................................................................8

*Wright v. Oregon Metallurgical Corp.*
  360 F.3d 1090 (9th Cir. 2004)............................................................39

**Statutes**

29 U.S.C. § 1001 ................................................................................16

29 U.S.C. § 1102 ..................................................................................4

29 U.S.C. § 1104 ................................................................................15

29 U.S.C. § 1108(b)(2)(B) ........................................................ 31, 32, 33

34 U.S.C. § 12421 ..............................................................................28

77 Fed. Reg. 5632 (Feb. 3, 2012) ........................................................33

ERISA § 1 ........................................................................................16

ERISA § 402 ......................................................................................4

ERISA § 404 ............................................................................. 10, 15

ERISA § 502 ....................................................................................10

**Rules**

Fed. R. Civ. P. 15(a)(1)(b) ................................................................43

## **ISSUES PRESENTED FOR REVIEW**

I.    Was VALIC acting as an ERISA fiduciary to the Plan when it assessed a predetermined contractual charge to which the Named Fiduciary agreed at arms' length in VALIC's initial contract with the Plan?

II.   ERISA's definition of a "'party in interest' . . . to an employee benefit plan" includes "a person providing services to such plan." Was VALIC a party in interest to the Plan before it provided any services?

III.  Do ERISA's prohibited-transaction rules treat the Named Fiduciary's contractual agreement to pay a predetermined surrender charge as a separate transaction from VALIC's later assessment of that charge?

IV.   Did the district court abuse its discretion by denying leave to amend the complaint when 1) Plaintiffs offered no justification for their 21-month delay in adding allegations or claims; and 2) the allegations or claims would not cure the deficiencies identified in the district court's dismissal order?

V.    Should the district court's dismissal of Plaintiffs' prohibited-transaction claim be affirmed on the alternative ground that Plaintiffs seek impermissible legal relief?

## **INTRODUCTION**

Plaintiffs/Appellants are an ERISA Plan[1] and its Named Fiduciary.[2] To obtain the benefits of an annuity offered by Defendant/Appellee VALIC for its plan participants,[3] the Named Fiduciary agreed to a surrender charge prominently identified on the annuity's first page. VALIC provided all benefits due under the annuity. The Named Fiduciary subsequently terminated the annuity and VALIC assessed the agreed-upon surrender charge. Plaintiffs now challenge the imposition of the surrender charge. The question is whether ERISA allows Plaintiffs to accept the annuity benefits while depriving VALIC of its bargained-for compensation under the guise of an ERISA breach of fiduciary duty and prohibited transaction.

Relying on ERISA's unambiguous text and the overwhelming weight of authority, the district court correctly held Plaintiffs to the bargain they made with VALIC. When VALIC and the Named Fiduciary negotiated the annuity transaction, VALIC was under no statutory duty to second-guess the Named Fiduciary's selection of the annuity and agreement to its terms. Likewise, VALIC was not a service provider to the Plan when it issued the annuity, so the transaction was not

---

[1] The "Plan" is Plaintiff/Appellant D.L. Markham, DDS, MSD, Inc. 401(k) Plan.

[2] The "Named Fiduciary" is Plaintiff/Appellant D.L. Markham, DDS, MSD, Inc.

[3] "VALIC" is Defendant/Appellee The Variable Annuity Life Insurance Company.

2

covered by the letter or the spirit of ERISA's prohibition on insider transactions between plan fiduciaries and parties in interest. And having correctly concluded that ERISA allowed VALIC and the Named Fiduciary to agree to the surrender charge, the district court rejected Plaintiffs' illogical assertion that VALIC later was required to reduce or waive that charge.

To challenge these conclusions, Plaintiffs ask the Court to torture ERISA's unambiguous text, disregard its statutory purpose, and upend settled precedent from this Court, other circuit courts, and the U.S. Supreme Court. The Court should decline that invitation. Plaintiffs made an arm's length bargain with VALIC, and they cannot rewrite ERISA to avoid the surrender charge the Named Fiduciary voluntarily agreed to pay.

Accordingly, and for other reasons discussed below, the district court's judgment should be affirmed.

## STATEMENT OF THE CASE

### I.    The Plan was established in 2017 to provide retirement benefits to the employees of the Named Fiduciary's dental practice.

David and Luminita Markham are both dentists. *See* ROA.14 at ¶ 5. Together, they own a dental practice in California. *See id.* The Markhams are not parties to this case, but their dental practice—a corporate entity named D.L. Markham, DDS, MSD, Inc., (the "Named Fiduciary")—is. *Id.* In 2017, the dental practice established the D.L. Markham DDS, MSD, Incorporated 401(k) Plan to provide retirement

benefits to the dental practice's employees. ROA.14 at ¶¶ 1, 5. In addition to being the Plan's sponsor, the Named Fiduciary is also the Plan's "administrator" and "named fiduciary" as those terms are defined under ERISA. ROA.14 at ¶ 5 (citing ERISA §§ 3(16)(A), 402(a)(2), 29 U.S.C. §§ 1002(16)(A), 1102(a)(2)).

## II.     The Named Fiduciary first approached VALIC in 2018 seeking services for the Plan.

After the Plan was established, Dr. Luminita Markham learned about VALIC from an employee of the dental practice. *See* ROA.15 at ¶ 9. Based on that employee's "favorable experience with VALIC," Dr. Markham contacted VALIC to learn more about its services. ROA.15 at ¶¶ 8, 9.

"[O]ver the course of several months," VALIC and the Named Fiduciary discussed VALIC's services. ROA.15 at ¶ 8. During that time, VALIC and the Plan were contractual strangers, and the Named Fiduciary had full discretion to reject VALIC's proposed services and select another provider. *See* ROA.15 ¶ 10. Instead, it decided to "hire[] VALIC." *Id.*

## III.    VALIC and the Named Fiduciary enter into two contracts.

The Plan's relationship with VALIC involved two contracts—(1) an annuity contract "selected by" the Named Fiduciary, and (2) a service provider agreement

that took effect on "May 18, 2018." *See* ROA.15–16 at ¶¶ 10–11; ROA.512 (issue date of "05/18/2018" for the annuity).[4]

### A.    The Named Fiduciary selected the annuity to provide investment options to Plan participants.

The annuity "selected by" the Named Fiduciary was issued on May 18, 2018, to fund the Plan's obligations and provide an insurance product through which various investment options were provided to the Plan's participants. *See* ROA.16 at ¶ 11; ROA.512 (issue date).

Under the annuity's terms and subject to any Plan restrictions, the Plan's participants could allocate "Purchase Payments" to "one or more Investment Options." *See* ROA.515 at §§ 2.04, 3. Those Purchase Payments and allocation decisions, in turn, were used to calculate "Accumulation Value[s]" that were recorded in individual accounts set up for each participant. *See* ROA.515 at § 1 (defining "Accumulation Value" and "Participant Account"). Subject to any

---

[4] Both contracts are in the record and can be properly considered in connection with a motion to dismiss, *see* ROA.512–64 (the annuity); ROA.557–64 (service provider agreement); *see also* ROA.487 (explaining that the Court could consider the contracts in ruling on VALIC's motion to dismiss because they "are referenced in the Complaint and are central to Plaintiffs' claims" (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). However, the Plan objected to the district court's consideration of the service provider agreement, ROA.710 at n.1, and the district court's opinion exclusively relied on the complaint's allegations about that agreement instead of the agreement itself. *See, e.g.,* ROA.1306 (citing the complaint's allegation of the date the service provider agreement took effect).

applicable restrictions set by the Plan or the Tax Code, participants could then make withdrawals from the accumulation value or surrender their account entirely. *See* ROA.518, 528 at §§ 4.01, 4.02, 5.01, 5.05.

Aside from requiring an initial payment, the annuity did not require participants to make Purchase Payments, nor was there a penalty if scheduled payments were omitted or stopped. *See* ROA.515 at § 2.04. Likewise, the annuity did not require the Plan or its participants to make withdrawals or surrenders. *See* ROA.518 at §§ 4.01, 4.02. Instead, those decisions were left to the discretion of the participants, the Plan, and its representatives. *See* ROA.515 at § 2.03 (explaining that the annuity "is subject to the provisions of the Plan," which could authorize the "Contract Owner"—i.e., the Named Fiduciary—"or a plan representative" to exercise "any rights that may be exercised by a Participant under [the annuity]"); ROA.512 (identifying the Named Fiduciary as the "Contract Owner").

If the Plan or its participants made a withdrawal or surrender, they would incur a surrender charge equal to 5% of the lesser of "the amount withdrawn" or "the amount of any Purchase Payments received" by VALIC during a specified period:

> • **Cash Surrender or Withdrawal Charge** -- There is a charge at the time of surrender or withdrawal equal to 5% of (i) the amount withdrawn, or (ii) the amount of any Purchase Payments received during the most recent 60 months prior to the surrender or withdrawal, whichever is less.  See Sections

6

ROA.512. As the Plan acknowledges, "[t]he existence of the surrender charge is prominently identified on the first page of the annuity contract." Appellants' Br. 5 (citing ROA.512).

As with any fee between two private parties, VALIC could "waive any withdrawal or surrender charge attributable to Purchase Payments received during specific periods of time, and under conditions and limitations set by [VALIC]." *See* ROA.519 at § 4.06). However, VALIC had no discretion to determine whether the Plan or its participants made Purchase Payments, withdrawals, or surrenders, so VALIC had no discretion to cause a transaction that would trigger a surrender charge or to influence any variable used to calculate that charge. *See* ROA.515 at § 2.04; ROA.518 at §§ 4.01, 4.02.

### B.     The service provider agreement outlined the services VALIC would—and would not—perform in connection with the annuity.

The second contract between VALIC and the Named Fiduciary was a service provider agreement that took effect on "May 18, 2018." ROA.15 at ¶ 10; *see also* ROA.1306, 1311 (crediting that allegation as required under the applicable legal standard[5]). That contract included a non-exhaustive list of responsibilities the Plan

---

[5] The Plan points to the handwritten date next to Dr. Markham's signature on the service provider agreement to suggest that the agreement was "seemingly executed by [the Named Fiduciary] on May 10, 2018, not May 18." Appellants' Br. 3 n.1 (citing ROA.562). However, that date is irrelevant because the service provider agreement was not effective until "the date that it [was] executed *by VALIC*," and

and the Named Fiduciary were required to fulfill, and VALIC offered to "provide assistance" with some of those responsibilities. ROA.179. However, the Named Fiduciary chose instead to retain a "Third Party Administrator" called "America's Best—Account Service Team" to perform the "applicable Administrative Services listed in" the service provider agreement. ROA.182.

Based on that election, VALIC's only duties under the service provider agreement related to the implementation and servicing of the annuity in accordance with information provided by and directions from the Plan's administrator or the Named Fiduciary. *See* ROA.180–81. By executing the service provider agreement, the Named Fiduciary "acknowledge[d] and agree[d] that the services provided by VALIC" were "solely non-discretionary services," and that the Named Fiduciary "or its designee shall be responsible for the duties of Plan Sponsor, Plan Administrator, Plan fiduciary and other related functions of a discretionary nature in support of the establishment and maintenance of the Plan." ROA.183.

---

the version of the contract in the record does not bear VALIC's signature. *See* ROA.562. Thus, the exhibit to VALIC's motion to dismiss is consistent with the complaint's allegation that the service provider agreement took effect on May 18, 2018. The district court was required to credit that allegation, and this Court must do the same. *See Waller v. Hanlon*, 922 F.3d 590, 600 (5th Cir. 2019) (acknowledging that "the contents of an exhibit" control when they "contradict[]" a complaint's allegations, but that the court must "accept [the complaint's] allegations as true" when they are "consistent" with the exhibit).

**IV.    The Named Fiduciary terminates the annuity and triggers the surrender charge.**

In January 2020, the Named Fiduciary decided to terminate its contracts with VALIC. *See* ROA.16 at ¶ 12. Before doing so, the Named Fiduciary asked VALIC to waive the surrender charge disclosed on the annuity's first page. *See* ROA.17 at ¶ 14. After being informed the surrender charge would be imposed as set forth in the contract, the Named Fiduciary transferred "all Plan assets" to another service provider, thereby incurring a surrender charge of approximately $20,000. ROA. 17 at ¶ 15.[6]

**V.    Procedural History**

    **A.    Plaintiffs file suit in the Eastern District of California alleging that the surrender charge violates ERISA.**

Plaintiffs sued VALIC and two other entities—Defendant/Appellee VFA,[7] and Defendant VALIC Retirement Services Company—in the Eastern District of California with a two-count complaint that accused "one or more of" the defendants of violating ERISA by assessing the surrender charge. *See* ROA.15 at ¶ 6 ("[A]ny

---

[6] Plaintiffs question how the total charge was calculated. *See* Appellants' Br. 23 n.7. While irrelevant for purposes of this appeal, the annuity exempts 10% of the Accumulation Value from the surrender charge. ROA.519 at §§ 4.03(b), 4.06(d). The assessed surrender charge is 5% of the non-exempt portion.

[7] "VFA" is Defendant/Appellee VALIC Financial Advisors, Incorporated.

reference to VALIC herein is generally a reference to one or more of [the] three entities" Plaintiffs chose to sue.); ROA.13–23 (complaint).

Count I of the complaint, entitled "Knowing Participant in a Prohibited Transaction – ERISA §§ 406(a)(1)(C); 502(a)(3)," focuses on the inclusion of the surrender charge provision in the annuity. *See* ROA.21 at ¶¶ 27–29. As relief on that count, the complaint seeks an order "[r]equiring VALIC to provide an accounting for, and to disgorge, all losses caused to [the Plan[8]]—including all fees retained—as a result of their knowing participation in a prohibited transaction ***as a nonfiduciary***." ROA.21 at ¶¶ 27–29 (emphasis added). However, the complaint makes no allegation regarding a specifically identifiable fund or account possessed by VALIC that holds the surrender charge. *See* ROA.13–23.

Count II, entitled "Self-Dealing Prohibited Transaction – ERISA §§ 404(a)(1)(A); 406(b); 409(a)," is based on the purported fiduciary act of deliberating "on whether to waive the surrender fee." ROA.22 at ¶ 30. The relief sought is disgorgement and an order "[r]equiring VALIC to restore all losses caused to the [the Plan] as a result of their self-dealing prohibited transaction ***as a fiduciary*** in imposing the surrender fee." ROA.22 at ¶ 2 (emphasis added).

---

[8] The complaint included class allegations and sought the same relief on behalf of a "Class and Subclass" as well as the Plan. *See* ROA.18–21, 22. However, this appeal raises no issues involving the uncertified putative class. *See* Appellants' Br. 1–2 (statement of issues).

### B.   The Eastern District of California entered a scheduling order and then transferred the case to the Southern District of Texas.

The Eastern District of California entered an "initial pretrial scheduling order" pursuant to "Rule 16 of the Federal Rules of Civil Procedure." ROA.26. Among other things, that order required pleading amendments to be made within 60 days of service of the complaint, ROA.27, which occurred on January 5, 2021. *See* ROA.5, 42–47 (showing service was made on January 5, 2021). The amendment period thus expired on March 8, 2021, after which time "amendments to pleadings" were not permitted "without leave of court, good cause having been shown." ROA.27. Although the scheduling order was later amended, ROA.72–75, the deadline for amended pleadings was never modified.

After being served with the complaint, VALIC and its co-defendants filed motions to transfer the case to the Southern District of Texas and to dismiss the complaint for failure to state a claim. *See* ROA.82–83 (notice of motion to transfer); ROA.110–112, 127–29 (notices of motions to dismiss). The Eastern District granted the motion to transfer and denied the motions to dismiss as moot. *See* ROA.437.

### C.   The district court dismissed some of Plaintiffs' claims by agreement, and the rest pursuant to Rule 12(b)(6).

After the transfer, the district court ordered the parties to "appear for an initial pretrial and scheduling conference" on July 29, 2022, and indicated that the court would "enter a Docket Control Order . . . at the conference." ROA.449, 50. However,

that order did not vacate the Eastern District's scheduling order, *see* ROA.449–50, and the district court cancelled the scheduling conference without entering its own docket control order.

Pursuant to an agreed motion, the district court dismissed all claims against VALIC Retirement Services Company and the prohibited-transaction claim against VFA. ROA.470. Plaintiffs do not challenge that order, so VALIC Retirement Services Company is not a party on appeal.

VALIC then filed a motion to dismiss that challenged the remaining claims and sought to strike the class allegations, *see* ROA.477–507, and VFA filed a separate motion challenging the knowing participation in a prohibited transaction claim alleged against it, *see* ROA.639–56. In their opposition to VALIC's motion, Plaintiffs asked for "a chance to amend in the event VALIC's motion [was] in any way successful," arguing that "[t]here is no basis for denying such leave, and it should be freely given." ROA. 734.

On October 5, 2022, the district court granted VALIC's motion to dismiss, denied VFA's separate motion as moot, denied Plaintiffs' request for leave to amend, and entered a final judgment of dismissal with prejudice. *See* ROA.1332–33 (order); ROA.1334 (judgment).

This appeal followed. *See* ROA.1335–37.

## SUMMARY OF THE ARGUMENT

Plaintiffs' first issue challenges the district court's dismissal of the claim against VALIC for fiduciary breach. To prevail, Plaintiffs had to allege that VALIC was acting as an ERISA fiduciary when it accepted the agreed upon annuity surrender charge. The overwhelming weight of authority holds that service providers are not fiduciaries when they negotiate and accept a predetermined contractual fee, and there is no merit to Plaintiffs' attempt to avoid that black-letter rule by arguing the surrender fee was not "predetermined." Plaintiffs' own allegations establish that the surrender fee was calculated using the formula to which the Named Fiduciary had previously agreed. Nothing in the annuity or Plaintiffs' argument suggests VALIC had discretionary authority to increase the surrender fee. And while VALIC had the theoretical right to waive the surrender charge, the same can be said of *all* service providers entitled to a fee. But as the district court correctly noted, a service provider's ability to decline a predetermined fee does not transform acceptance of the fee into an act of fiduciary discretion. Thus, Plaintiffs' first issue fails because VALIC was not a fiduciary.[9]

Plaintiffs' second and third issues challenge the district court's dismissal of their prohibited-transaction claim. To prevail, Plaintiffs must (1) establish that

---

[9] *See infra* Argument Part II.

VALIC was a party in interest, (2) identify a prohibited transaction, and (3) seek equitable (as opposed to legal) relief. Plaintiffs fail on every front.

Under ERISA's relevant statutory text, a "party in interest" to an ERISA plan is "a person providing services to such plan." ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B). As a matter of unambiguous statutory text,[10] Supreme Court precedent,[11] and unbroken circuit-level consensus,[12] VALIC was not a party in interest because it was not "providing services to [the Plan]" when it issued the annuity. Neither Plaintiffs nor the supporting amicus provide a valid reason for the Court to adopt a contrary interpretation in violation of the statute's plain text.[13] Nor is there any merit to Plaintiffs' attempt to treat the imposition of the surrender fee as a separate and later prohibited transaction. Under the plain meaning of the word "transaction" and all relevant precedent, the imposition of the surrender fee was part of the preexisting annuity transaction and that transaction was not prohibited for reasons already discussed.[14] Further, because the Court can affirm on any basis supported by the record, Plaintiffs' prohibited-transaction claim independently fails

---

[10] *See infra* Argument Part III.A.1.

[11] *See infra* Argument Part III.A.2.

[12] *See id.*

[13] *See infra* Argument Part III.A.3.

[14] *See infra* Argument Part III.B.

because Plaintiffs seek impermissible legal relief from VALIC's general assets instead of equitable relief from a specifically traceable fund.[15]

Plaintiffs' final issue challenges the district court's denial of their request for leave to amend. However, the district court correctly noted that Plaintiffs could have amended or sought to amend their complaint in the many months that preceded the dismissal order, and Plaintiffs have yet to identify an amendment that could salvage their deficient claims. Accordingly, the district court acted well within its discretion to deny Plaintiffs' motion to amend based on undue delay.[16]

## **ARGUMENT**

## I.  **Overview: Plaintiffs' claims undermine the public policies behind ERISA.**

This case is about the sale of an annuity, which is *not* conduct regulated by ERISA. Indeed, ERISA imposes duties and potential liability on plan fiduciaries and those with existing relationships to a plan—not providers negotiating and selling their products up-front and at arm's length with plan fiduciaries. *See, e.g.*, ERISA §§ 404, 406, 409, 29 U.S.C. §§ 1104, 1106, 1109; *see also Chavez v. Plan Benefit Services, Inc.*, No. AU-17-CA-00659-SS, 2018 WL 6220119, *4 (W.D. Tex. Sept.

---

[15] *See infra* Argument Part III.C.
[16] *See infra* Part IV.

12, 2018) (holding that paying service providers' fees in accordance with the terms of the initial contract is not the risk that Congress sought to legislate against).

The statutes relied on by Plaintiffs aim to prohibit transactions with characteristics such as "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996). "Contracting at arm's length with unrelated service providers plainly does not share that characteristic: it is not a deal struck with 'plan insiders.'" *Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 36 (D.D.C. 2018).

In enacting ERISA, Congress recognized the national public interest in private employee benefit plans. *See* ERISA § 1, 29 U.S.C. § 1001. ERISA established standards of conduct, responsibility, and obligation for fiduciaries of such plans. *See id.* At the same time, the Supreme Court recognizes the danger of imposing liability on non-fiduciaries which could cause unnecessarily high insurance costs or might deter companies from providing services to a plan. *See Mertens v. Hewitt Associates*, 508 U.S. 248, 262–63 (1993) (acknowledging a "tension between the primary [ERISA] goal of benefiting employees and the subsidiary goal of containing pension costs") (citation omitted); *see also Reich v. Rowe*, 20 F.3d 25, 32 (1st Cir. 1994) ("We are concerned that extending the threat of liability over the heads of those who only lend professional services to a plan without exercising any control over, or

transacting with, plan assets will deter such individuals from helping fiduciaries navigate the intricate financial and legal thicket of ERISA"). Thus, "the limited remedies available under ERISA are an inherent part of the 'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 215 (2004).

As a result, ERISA seeks to allocate "liability for plan-related misdeeds in reasonable proportion to respective actors' power to control and prevent the misdeeds." *See Mertens*, 508 U.S. at 262. Here, the Named Fiduciary alone had the power to control whether to agree to the contracts with VALIC and the clearly disclosed fee provisions. *See Santomenno*, 883 F.3d at 838 (noting that "any plan sponsor who agreed to a 99% fee arrangement would *itself* be liable for breaching its fiduciary duty. The employer has the express duty under § 1104(a)(1)(A)(ii) of defraying reasonable expenses of administering the plan, and, absent some sort of conduct not alleged in plaintiffs' complaint, claims that fully disclosed fee arrangements are unreasonable lie against the employer, not the service provider") (cleaned up). On the flip side, an insurer selling its products or negotiating its prospective fees at arm's length is not subject to liability. *See Am. Fed'n of Unions v. Equitable Life Assur. Soc'y*, 841 F.2d 658, 664 (5th Cir. 1988) ("Simply urging the purchase of its products does not make an insurance company an ERISA

17

fiduciary with respect to those products."). Any other conclusion undermines ERISA's purpose by "discourage[ing] service providers from contracting with [plans] in the first place." *Sellers*, 316 F. Supp. 3d at 36.

Plaintiffs' claims arise solely from the charges the Named Fiduciary agreed to pay, at arm's length, before VALIC had a relationship with Plaintiffs. Consistent with its purposes, ERISA does not impose liability on VALIC in these circumstances.

## II. Issue 1: Plaintiffs' fiduciary-breach claim fails because VALIC was not a fiduciary.

Plaintiffs' first issue challenges the dismissal of its claim for fiduciary breach under section 409(a) of ERISA, which imposes liability on "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries." ERISA § 409(a), 29 U.S.C. § 1109(a). As the Supreme Court recognized in *Pegram*, section 409 does not impose liability on nonfiduciaries (or even upon fiduciaries who are acting in a non-fiduciary capacity), so "the threshold question is not whether" VALIC's alleged conduct "adversely affected" the interests of the Plan's beneficiaries, "but whether [VALIC] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (explaining that ERISA allows fiduciaries to "have financial interests adverse to beneficiaries"). As the district court correctly recognized, VALIC was not acting as a fiduciary when

it declined the Named Fiduciary's request to waive the predetermined surrender charge to which the Named Fiduciary agreed when it initially contracted with VALIC. *See* ROA.1314–19.

Plaintiffs do not dispute the major premise of the district court's ruling—i.e., that "a plan's service provider does not act as an ERISA fiduciary by 'merely accepting previously bargained- for fixed compensation.'" ROA.1315 (citing *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 655 (9th Cir. 2019)).[17] Quite the

---

[17] The district court cited one other case in support of this proposition. *See* ROA.1315 n. 45 (citing *Danza v. Fidelity Management Trust Co.*, 533 F. App'x 120, 126 (3d Cir. 2013)). That was an exercise in economy, not an indication that only two courts have addressed the issue. *See, e.g., Am. Fed'n of Unions Loc. 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.*, 841 F.2d 658, 664 (5th Cir. 1988) (holding that an insurer's promotion of its products to an ERISA plan was not a fiduciary function when the insurer "had no control over whether the [plan] would accept or reject its advice to self-insure"); *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987) ("When a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan . . . . Such a person is not an ERISA fiduciary with respect to the terms of the agreement for his compensation."); *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 293 (3d Cir. 2014) ("[A] service provider owes no fiduciary duty to a plan with respect to the terms of its service agreement if the plan trustee [or fiduciary] exercised final authority in deciding whether to accept or reject those terms."); *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) ("[A] service provider does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms."); *McCaffree Financial Corp. v. Principal Life Insurance Co.*, 811 F.3d 998, 1003 (8th Cir. 2016) ("a service provider's adherence to its agreement with a plan administrator does not implicate any fiduciary duty where the parties negotiated and agreed to the terms of that agreement in an arm's-length bargaining process"); *Santomenno*, 883 F.3d at 838 (holding that a service provider is "not an ERISA

opposite, Plaintiffs readily concede "that a service provider does not act as a fiduciary when it merely accepts previously bargained-for fixed compensation." Appellants' Br. 11 (quoting *Depot, Inc.*, 915 F.3d at 655). That concession is dispositive. As Plaintiffs acknowledge, the surrender charge was fixed at a precise amount that was "prominently identified on the first page of the annuity contract," and it was the Named Fiduciary—not VALIC—who had sole discretion to accept or reject the annuity. Appellants' Br. 5 (citing ROA.512[18]); ROA.16 (acknowledging that the annuity was "selected by [the Named fiduciary] for the Plan"). After the Named Fiduciary selected the annuity instead of "rejecting [VALIC's] product and selecting another service provider," VALIC had no fiduciary duty to later decline the charge to which it was contractually entitled and which the named fiduciary had already agreed to pay. *Depot*, 915 F.3d at 655.[19]

---

fiduciary when negotiating its compensation with a prospective customer," nor when it withdraws the predetermined fees).

[18] *See also* ROA.512 (identifying the surrender charge in an amount "equal to 5% of (i) the amount withdrawn, or (ii) the amount of any Purchase Payments received during the most recent 60 months prior to the surrender or withdrawal, whichever is less").

[19] To be clear, the surrender charge is entirely proper. Annuities are "structured as long-term investments," so early withdrawals necessitate an additional charge to fully compensate providers for their "up-front costs." *See Cruson v. Jackson Nat. Life Ins. Co.*, 954 F.3d 240, 246 (5th Cir. 2020). Some providers offset the costs of potential early terminations with a front-end implementation fee, but VALIC utilizes a surrender fee that is only imposed if an early termination actually occurs. *See* ROA.512. Because annuities are "negotiated at arm's length," the

Because VALIC's right to collect a predetermined charge is indisputable, Plaintiffs illogically insist the surrender charge was not predetermined. To that end, Plaintiffs argue that VALIC's contractual discretion to waive or reduce the surrender charge transforms that charge from a "contractually required, pre-determined fee" into a "fee over which the provider has express delegated discretionary authority." *See* Appellants' Br. 26. Reasoning from that premise, Plaintiffs rely on ERISA's definition of "fiduciary" and a line of cases "involving delegated discretion to set a fee" to argue that VALIC was a functional ERISA fiduciary when it declined to waive the surrender charge. Appellants' Br. 23, 27–29. These arguments fail as a matter of law and logic.

First, the arguments rest on the false premise that "the Plan delegated to VALIC unlimited discretionary authority over" the surrender charge. Appellants' Br. 23. In truth, that discretion rested with the Named Fiduciary and Plan participants. Per the annuity, VALIC had no authority to impose a surrender charge unless Plaintiffs or a participant made a surrender or withdrawal. *See* ROA.515 at § 2.04; ROA.518 at §§ 4.01, 4.02. If a surrender or withdrawal was made, the amount of the surrender charge was determined by a contractual formula the Named Fiduciary approved when it "selected" the annuity "for the plan." ROA.16 at ¶ 11.

---

decision between those approaches "is governed by competition in the marketplace" as opposed to fiduciary duties. *Depot*, 915 F.3d at 655 (cleaned up).

The annuity did not allow VALIC to unilaterally change that formula. As such, VALIC had no discretion to impose, and did not impose, a surrender charge higher than the amount the Named Fiduciary had contractually approved.

Because VALIC lacked discretion to determine whether the surrender charge was invoked or any ability to alter the formula or factors that determined the amount charged, VALIC's application of the surrender charge does not support fiduciary status under ERISA. As this Court has explained, VALIC's authority to waive or reduce the surrender charge that the Named Fiduciary agreed to pay is "irrelevant" under subsection (i) of ERISA's fiduciary definition because VALIC "did not exercise that authority with respect to the only transaction at issue." *Tiblier v. Dlabal*, 743 F.3d 1004, 1008–09 (5th Cir. 2014); *see also Depot, Inc.*, 915 F.3d at 656 ("[T]he mere existence of a discretionary ability is insufficient to bestow fiduciary status if that discretion was not 'exercise[d].'" (quoting ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i)). And under subsection (iii), VALIC was not a fiduciary because it "played no part in the administration of the Plan[], which was administered at all relevant times by the Named Fiduciary and an "independent third-party administrator" selected by the Named Fiduciary. *Tiblier*, 743 F.3d at 1010; *see also Depot*, 915 F.3d at 654, n.5 (explaining that subsection (iii) is generally only applicable when an insurer "mak[es] a discretionary determination about whether a claimant is entitled to benefits); *see* ROA.14 at ¶ 5 ("Markham is

also the 'administrator' of the Plan within the meaning of Section 3(16)(A) of ERISA."); ROA.561 (declining VALIC's Administrative Services and designating "Third Party Administrator" called "America's Best – Account Services Team" to perform those services). Thus, VALIC's assessment of the predetermined surrender charge does not fall within the statutory text of ERISA's fiduciary definition.

For the same reason, Plaintiffs' reliance on the "logic of" this Court's decision in *Equitable Life* and the Sixth Circuit's decision in *Hi-Lex* does not support fiduciary status. Both cases involved administrators who ***exercised*** discretion to ***increase*** their compensation. In *Equitable Life*, for example, a plan's administrator was a fiduciary with respect to his compensation when he "***exercised*** discretion over which claims would be paid" and thereby increased his compensation "with every payment." *See Equitable Life*, 841 F.2d at 663 (emphasis added). And in *Hi-Lex*, a plan's third-party administrator ***exercised*** discretionary authority and control over a plan's assets "by inflating hospital claims with hidden surcharges" for "administrative compensation" that were imposed "***in addition to*** the 'administrative fee'" set forth in a fee schedule provided to the plan's sponsor. *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.,* 751 F.3d 740, 742, 743 (6th Cir. 2014) (emphasis added). Here, by contrast, VALIC neither had nor exercised discretion to increase the surrender charge beyond a predetermined amount the Named Fiduciary had already agreed to pay.

For these reasons, Plaintiffs' arguments about fiduciary status fail under the undisputed facts and well-settled law. But before moving on, it is worth pausing to consider the fundamental absurdity of Plaintiffs' attempt to hold VALIC responsible for the Named Fiduciary's decision. As the district court correctly noted, contracting parties always have discretion (within the boundaries of applicable law) to waive their contractual rights, so a "provider can always agree to accept less compensation or waive the fee entirely." ROA.1318; *see also, e.g.*, 13 Williston on Contracts § 39:24 (4th ed. 2020) ("[I]t is well settled that a contracting party may unilaterally waive a provision of the contract, including, as a general rule, any condition precedent which has been placed in the contract for that party's benefit.") If the mere existence of unexercised discretion to ***waive*** a charge could transform freely negotiated compensation into a fiduciary responsibility, non-fiduciary service providers would be perversely incentivized to include terms in their contracts that ***prohibit*** them from reducing or waiving charges. That incentive would frustrate ERISA's goals and increase the cost to hire "service providers and other nonfiduciary professionals who provide advice or expertise" that "is vital for the successful operation of ERISA plans." *Reich*, 20 F.3d at 32.

Accordingly, the district court's dismissal of the fiduciary breach claim should be affirmed.

### III.    Issues 2, 3, and 5: Plaintiffs' prohibited transaction claim fails for three independent reasons.

Plaintiffs' second and third issues and the Secretary of Labor's amicus brief[20] challenge the dismissal of the complaint's prohibited transaction claim against VALIC.[21] To prevail, Plaintiffs must establish that (A) VALIC was a "party in interest," (B) VALIC was involved in a prohibited transaction, and (C) Plaintiffs seek appropriate equitable relief. Plaintiffs fail on the first two fronts and make no argument on the third.

### A.    Issue 2: VALIC was not a party in interest when the annuity was issued.

ERISA Section 406(a)(1) prohibits fiduciaries from causing plans to engage in specified transactions with a "party in interest" who the "fiduciary might be inclined to favor at the expense of the plan's beneficiaries." *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 238 (2000); *see also Lockheed*

---

[20] The Secretary's amicus brief is cited as "DOL Amicus Br."

[21] The dismissal of the prohibited transaction claim against VFA is not at issue because Plaintiffs did not mention VFA in their statement of issues or offer any argument regarding that dismissal. *See* Appellants' Br. 1–2 (statement of issues); *id* at 15–46 (summary of argument and argument); *see also Cunningham v. Circle 8 Crane Servs., L.L.C.*, No. 22-50170, 2023 WL 2624692, at *4 (5th Cir. Mar. 24, 2023) ("[F]ailure to raise an issue on appeal constitutes waiver of that argument."); *NewCSI, Inc. v. Staffing 360 Sols., Inc.*, 865 F.3d 251, 259 (5th Cir. 2017) (explaining that waiver "extinguishes an error completely"); *U.S. v. Still*, 102 F.3d 118, 122 n.7 (5th Cir. 1996) ("[A]n appellant abandons all issues not raised and argued in its ***initial*** brief on appeal." (quotations omitted, emphasis in original)).

*Corp. v. Spink*, 517 U.S. 882, 893 (1996) (holding that § 406 seeks to prevent "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length").

Plaintiffs do not contend that VFA was ever a party in interest,[22] but they insist that VALIC was a party in interest when it issued the annuity. Appellants' Br. 18. That argument fails under ERISA's unambiguous statutory text and applicable precedent from the Supreme Court and every circuit court to consider the question. The non-textual arguments advanced by Plaintiffs and the Secretary cannot override ERISA's unambiguous statutory text.

### 1. ERISA's unambiguous definition of "party in interest" did not include VALIC when the annuity took effect.

ERISA defines a "party in interest" with a list of persons and entities "that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." *Harris Trust*, 530 U.S. at 242. One entry in that list is "a person providing services to such plan." ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B). Plaintiffs argue that VALIC fell within that definition at all relevant times, including "the time when it entered into the annuity contract." Appellants' Br. 18.

---

[22] Plaintiffs' failure to offer any argument with respect to VFA on this issue constitutes waiver. *See Cunningham*, 2023 WL 2624692, at *4; *NewCSI, Inc.*, 865 F.3d at 259; *Alaniz*, 591 F.3d at 777. If any argument was preserved, it would fail for the reasons set forth in response to Plaintiffs' arguments about VALIC.

26

The district court correctly rejected the argument. As a matter of ordinary usage, the phrase "a person providing services" calls to mind a person who is ***currently*** providing services. And while that phrase could be used in other contexts to generically refer to a provider's services without indicating when those services are rendered, that is not how the phrase is used in the "party in interest" definition. Instead, that definition specifies that a service provider is a "'party in interest' . . . ***as to an employee benefit plan***" only if it is "providing services ***to such plan***." ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B) (emphasis added). Given that context, VALIC could only qualify as a "party in interest' . . . as to [the Plan]" when it was "providing services to [the Plan]." *Id.*

Although Plaintiffs and the Secretary disagree with this interpretation, they do not advance a credible alternative interpretation of the statutory text. Instead, Plaintiffs ignore the district court's textual analysis altogether, and the Secretary cites the Dictionary Act and the Violence Against Women Act to argue the definition is "at best ambiguous" because the participle phrase "providing services" can be used in the future tense. DOL Amicus Br. 5, 10–11.

The Secretary's argument fails to acknowledge the effect of the surrounding context. The Violence Against Women Act refers to "***proposals*** providing services" to underserved populations, and the forward-looking word "proposal" necessarily denotes that the proposed "services" have not yet been rendered. 34 U.S.C.

27

§ 12421(3) (emphasis added). ERISA's party in interest definition, by contrast, refers to "*persons* providing services," and the "services" in question are those rendered "to [*a previously specified*] plan." ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B) (emphasis added). As the district court recognized, that context "limits the natural reading" of "providing services" and excludes persons who are not currently providing services to the specific ERISA plan in question. ROA.1321. And for the same reason, the Dictionary Act's future-tense presumption "does not apply." *State v. United States Env't Prot. Agency*, 983 F.3d 826, 838 (5th Cir. 2020) (declining to apply "[t]he future-tense presumption" when it was clear in context that the text "consider[ed] only the present tense"); *see also Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 336 (7th Cir. 2019) (rejecting an agency's invocation of the Dictionary Act to override the "plain meaning" of the participle phrase "having [a physical or mental] impairment").

### 2. The district court's interpretation is supported by Supreme Court precedent and all circuit-level authority to consider the issue.

Because the statutory definition of "party in interest" is unambiguous, the Court's inquiry can end with that statutory text. *See Schaeffler v. United States*, 889 F.3d 238, 242 (5th Cir. 2018) ("In the absence of any ambiguity, our examination is confined to the words of the statute." (cleaned up)). Indeed, a review of other decisions interpreting that text confirms the district court's interpretation and excludes the one advanced by Plaintiffs and the Secretary.

Take first the Supreme Court's treatment of that definition in *Harris Trust*, which involved a claim for equitable relief against a non-fiduciary service provider—i.e., the exact legal theory Plaintiffs attempt here. *Harris*, 530 U.S. at 241. From the outset, the Court explained that "Congress defined 'party in interest' to encompass those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." *Id.* at 242. The Court assumed the service provider in *Harris Trust* was a party interest because it "provided broker-dealer services" to the Plan "[d]uring the same period" that the alleged prohibited transactions occurred. *Id.*

Under *Harris Trust*, VALIC was not a "party in interest" when it issued the annuity: not only did it not provide services to the Plan at the time the annuity transaction occurred, there is no reason a plan fiduciary would be "inclined to favor" a prospective service provider "at the expense of the Plan's beneficiaries." *Id.* at 238. And notably, Plaintiffs and the Secretary do not argue otherwise, or even acknowledge the Supreme Court's interpretation of the statutory text.

Instead, they focus on the Supreme Court's previous decision in *Lockheed*. However, *Lockheed* also supports the district court's analysis by interpreting ERISA's list of transactions with parties in interest as a prohibition on "commercial bargains that present a special risk of plan underfunding because ***they are struck with plan insiders***, presumably not at arm's length." *Lockheed*, 517 U.S. at 893 (emphasis added). While the Secretary would discard that statement as dicta, neither

the Secretary nor Plaintiffs dispute that *Lockheed* used the phrase "plan insiders" to describe ERISA's definition of "party in interest." *Id.* Dicta or not, that interpretation and the Supreme Court's subsequent interpretation in *Harris* constitute binding precedent that supports the district court's conclusion that "party in interest" does not include prospective service providers with no pre-existing relationship to a plan. *See Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016) ("[W]e are generally bound by Supreme Court dicta, especially when it is recent and detailed." (cleaned up)).

The relevant authority from other circuit courts universally reaches the same conclusion. In *Sweda* and *Peters*, the Third and Fourth Circuits recognized "a service provider" that "has no prior relationship with a plan before entering a service agreement . . . is not a party in interest at the time of the agreement." *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 337 n. 12 (3d Cir. 2019); *accord Peters v. Aetna Inc.*, 2 F.4th 199, 229 (4th Cir. 2021); *see also Danza*, 533 F. App'x at 126 ("Negotiation between such unaffiliated parties does not fall into the category of transactions that Section 406(a) was meant to prevent."). In *Ramos*, the Tenth Circuit squarely held that a "prior relationship must exist between the fiduciary and the service provider to make the provider a party in interest," thereby rejecting a contrary interpretation that would transform "arm's length deal[s]" with service providers into prohibited transactions. *Ramos v. Banner Health,* 1 F.4th 769, 787 (10th Cir. 2021).

To give the impression of dissent among the circuits, Plaintiffs (without the

support from the Secretary) claim that the Eighth Circuit "concluded" in *Braden* "that all service providers—new and existing—are parties in interest." *See* Appellants' Br. 30 (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009). But *Braden* itself says nothing of the sort. There, the party in interest was a trustee and service provider when the relevant transactions occurred, so *Braden* neither asked nor answered the question here—i.e., whether an unrelated service provider is a party in interest ***before*** it provides services to a plan. *See id.* at 600–01; *see also Braden v. Wal-Mart Stores Inc.*, 590 F. Supp. 2d 1159, 1163, 1164 (W.D. Mo. 2008) (explaining that Merrill Lynch was a trustee "[d]uring the period in dispute" and that the transactions at issue occurred "[t]hroughout" the same period).

Thus, in addition to being required by unambiguous statutory text, the district court's interpretation of "party in interest" is consistent with all relevant authority from the Supreme Court and the other circuit courts.

### 3. *The non-textual arguments advanced by the Plaintiffs and the Secretary cannot override unambiguous statutory text.*

To advance their atextual interpretation of "party in interest," Plaintiffs and the Secretary make a variety of non-textual arguments. None have merit.

First, Plaintiffs and the Secretary point to a different exemption added to ERISA in 2021 that supposedly "demonstrate[s] Congress's intent to include new service providers within ERISA's definition of parties in interest." *See* DOL Amicus Br. 11–15 (discussing Section 408(b)(2)(B), 29 U.S.C. § 1108(b)(2)(B));

Appellants' Br. 33–37 (same). However, that exemption does not even use the phrase "party in interest," and its definition of "covered service provider" applies only "for the purposes of [a] subparagraph" that governs services with group health plans. *See* Section § 1108(b)(2)(B)(ii)(I)-(I)(aa). This argument defies one of the bedrocks of statutory interpretation: where Congress includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. *See Mississippi Poultry Ass'n, Inc. v. Madigan*, 31 F.3d 293, 301 (5th Cir. 1994).

Absent a more direct reference to the definition of "party in interest," the district court correctly credited the statute's unambiguous text instead of attempting to "infer the intent" of the Congress that passed ERISA in 1974 from the unexpressed "views of a subsequent Congress" that amended a different section of the act. *See Vaz Borralho v. Keydril Co.*, 710 F.2d 207, 209–10 (5th Cir. 1983) (cleaned up) . The district court also correctly noted that Congress could easily amend § 1002(14). The fact Congress has not so acted is significant. *See Mississippi Poultry*, 31 F.3d at 301.

Second, Plaintiffs argue that the definition of "party in interest" cannot be limited to "person[s] *already* providing services to [a] plan" because an exemption to the prohibited-transaction rule in Section 408(b)(2)(A) contemplates "transactions

with a party in interest to establish a plan" *See* Appellants' Br. 32–33 (citing ERISA § 408(b)(2)(A), 29 U.S.C. § 1108(b)(2)(A)). In Plaintiffs' view, that exemption would be meaningless if the relevant definition of "party in interest" only includes "person[s] *already* providing services to the plan." *See id.* at 32–33. Not so. The district court's interpretation only applies to one of *nine* categories of persons and entities included in the definition of "party in interest." *See, e.g.,* ERISA § 3(14)(A)–(I), 29 U.S.C. § 1002(14)(A)–(I) (defining "party in interest" to include, among others, a plan's "counsel"; an "employer" or "employee organization" whose employees or members are covered by a plan; and an expansive network of persons with a legal or familial connections to a plan). Those categories do not require a pre-existing service relationship, so they can all qualify as a "party in interest" that provides "office space, or legal, accounting, or other services necessary" to establish a plan. *See* ERISA § 408(b)(2)(A), 29 U.S.C. § 1108(b)(2)(A). Thus, Section 408(b)(2)(A)'s exemption has meaning under the textual interpretation of "party in interest," so the exemption provides no support for Plaintiffs' atextual interpretation.

Third, Plaintiffs look for meaning in the preamble to an amendment to a DOL regulation that says "any person providing services to the plan is defined by ERISA to be a 'party in interest.'" *See* 77 Fed. Reg. 5632 (Feb. 3, 2012); Appellants' Br. 30, 40–41. Importantly, the Secretary does not join Plaintiffs' argument that the preamble is entitled to *Chevron* deference, and Plaintiffs do not dispute the doctrine

is inapplicable when the "text and structure" of a statute "unambiguously foreclose" an agency's interpretation. *Chamber of Commerce of United States of America v. United States Department of Labor*, 885 F.3d 360, 369 (5th Cir. 2018); *see also Cargill v. Garland*, 57 F.4th 447, 465 (5th Cir. 2023) (explaining how "well-settled waiver principles" preclude *Chevron* deference when the government "fails to raise the argument when presented with the opportunity"). Here, the text and structure are unambiguous for reasons already discussed, so *Chevron* deference cannot apply. *Id.*; *cf Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 311 n.22 (5th Cir. 2007) (questioning whether a comment ***about*** a final rule in a preamble to the rule can ever qualify as an "interpretation" eligible for *Chevron* deference). And in any event, the supposed "interpretation" in the preamble is actually just a "passing comment" that does not represent "the Department of Labor's considered interpretation of statutory text," and the Secretary's participation as an amicus does not elevate that comment into a formal interpretation. *Sellers*, 316 F. Supp. 3d at 36 n.3 (addressing portion of the preamble at issue here); *Belt v. EmCare, Inc.*, 444 F.3d 403, 416 n.35 (5th Cir. 2006) ("*Chevron* deference is inappropriate for informal agency interpretations, such as . . . *amicus curiae* briefs.").

Fourth, the Secretary invokes the common law of trusts to argue that the district court's interpretation frustrates the "central purpose behind [ERISA's] ban on service contracts with parties in interest"—i.e., to "circumscribe a fiduciary's

ability to transfer its obligations to third parties." DOL Amicus 25–26. However, the Secretary cites no authority supporting its claim that the prohibited transaction rule was meant to discourage ***all*** contracts with service providers, and the Supreme Court has already held that the statutory purpose was simply to avoid transactions that pose insider risk. *See Harris*, 530 U.S. at 242; *Lockheed*, 517 U.S. at 893. As recently noted by the Seventh Circuit, ERISA's statutory purpose would be undermined "[i]f routine payments by plan fiduciaries to third parties in exchange for plan services are prohibited, because "[e]mployee benefit plans would no longer be able to outsource tasks like recordkeeping, investment management, or investment advising, which in all likelihood would result in lower returns for employees and higher costs for plan administration." *Albert v. Oshkosh Corporation*, 47 F.4th 570, 585-586 (7th Cir. 2022). Neither Plaintiffs nor the Secretary deny that the district court's interpretation adequately protects against insider risks, and the Secretary is wrong in contending the interests of ERISA are furthered by holding all contracts with service providers to be prohibited transactions.

And finally, the Secretary warns that application of ERISA's unambiguous language will "create incentives for plan fiduciaries to behave in ways that are inimical to the plan's interests." DOL Amicus Br. 24. Yet, the party in interest definition has been in effect since 1974, and those consequences have yet to occur even after three circuit courts have rejected the DOL's interpretation. *See Danza*,

533 F. App'x at 125; *Peters*, 2 F.4th at 229; *Ramos*, 1 F.4th at 787. Thus, to the extent such incentives might otherwise exist, experience confirms that ERISA's other protections sufficiently deter the problematic behavior predicted by the DOL without the need to disregard unambiguous statutory text. *See, e.g., Santomenno*, 883 F.3d at 838 ("[A]s the Third Circuit correctly noted, 'any plan sponsor who agreed to a 99% fee arrangement would itself be liable for breaching its fiduciary duty.'" (quoting *Santomenno ex rel. John Hancock Tr.*, 768 F.3d at 295 n.6).

### B.    Issue 3: VALIC was not involved in a prohibited transaction.

Based on the district court's statement that VALIC was "likely" a party in interest after it began "providing services to Plaintiffs," ROA.1328, Plaintiffs' third issue tries to find a prohibited transaction that occurred during that later time. Once again, Plaintiffs offer no argument with respect to VFA on this issue.[23] But with respect to VALIC, Plaintiffs argue (1) that the annuity might have been issued in a separate transaction that occurred after the service provider agreement took effect, and (2) that the "imposition of" the surrender fee was "a separate and distinct prohibited transaction." Appellants' Br. 40, 41–43.

The first argument is preposterous. Plaintiffs insinuate on appeal they might

---

[23] That failure constitutes waiver. *See Cunningham*, 2023 WL 2624692, at *4; *NewCSI, Inc.*, 865 F.3d at 259; *Alaniz*, 591 F.3d at 777. If any argument was preserved, it would fail for the reasons set forth in response to Plaintiffs' arguments about VALIC.

find "evidence" in discovery "to suggest that Plaintiffs signed the service provider agreement on May 10." Appellants' Br. 40. But Plaintiffs plainly do not need discovery to consult the service provider agreement "in [their] files," ROA.710 n.1, and they could access that agreement when they affirmatively and unequivocally alleged in the complaint that the agreement took effect on "May 18, 2018." *See* ROA.15 at ¶ 10 ("Effective May 18, 2018, Markham hired VALIC to maintain the Plan on VALIC's retirement platform by entering into" the service provider agreement.). That allegation, which Plaintiffs never sought to amend, constitutes a "judicial admission[]" that is "conclusively binding on" Plaintiffs, so the service provider agreement's effective date is not "at issue." *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (cleaned up). Moreover, the district court was bound to "assume [the] veracity" of that allegation and the record confirms that it did so. ROA.1311 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (alteration in original)); ROA.1306 (crediting the complaint's allegation about the effective date of the service provider agreement). Based on that incontrovertible fact, VALIC had no relationship to the Plan prior to May 18, 2018 and the issuance of the annuity was not a prohibited transaction for reasons already discussed.

Plaintiffs further point to the assessment of the surrender charge as a separate prohibited transaction. *See* Appellants' Br. 42. Relying solely on the definition of "transaction" in Black's Law Dictionary, the Secretary makes the same argument.

*See* DOL Amicus Br. 26–27. But once again, this argument fails under the text of ERISA and applicable case law. As a matter of plain language, the word "transaction" can "comprehend a series of many occurrences," including multiple payments made under separate related contracts. *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926); *Matter of Kosadnar*, 157 F.3d 1011, 1015 (5th Cir. 1998) (holding that "the overall Compensation Plan" between an insurance company and its agent was "one transaction which encompassed" multiple payments made under several contracts). In keeping with that plain language, the fulfillment of a contractual obligation[24] is not a separate transaction from the contract itself. *See Chavez*, 2018 WL 6220119, at *3 ("[T]he payment of funds in fulfillment of an extant contractual obligation would not qualify as a transaction under § [406] or § [408] because the payment of such funds is neither 'contracting' nor 'making

---

[24] Plaintiffs cite the Fourth Circuit's decision in *Peters* to argue that "a service provider's receipt of questionable fees pursuant to a pre-existing service contract could be a prohibited transaction." Appellants' Br. 42. *Peters* held nothing of the sort. The relevant transactions were claims for medical benefits, and *Peters* did not treat each step of that "claims process" as its own discrete transaction. *Peters*, 2 F.4th at 240. Quite the opposite, that decision viewed the transactions on "the individual claims level" for the purpose of its standing analysis, and its discussion of ERISA's remedies combined "***all*** of [the beneficiary's] health care claims" to hold that the service provider's alleged participation in prohibited transactions was part of "a single breach" of ERISA. *Id.* at 218, 224 (emphasis in original). Thus, *Peters* stands only for the uncontroversial proposition that a service provider is a party in interest "***after*** the execution of" a contract that makes it "a service provider to [a] plan," *id.* at 240, not that the payment of a contractual fee is a separate transaction.

reasonable arrangements' but rather the fulfillment of arrangements already made."); *see also Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (holding that a "decision to adhere to" a contract's terms "was not a 'transaction'" under § 406). And even if the surrender charge could constitute its own transaction, that separate transaction would not even arguably qualify as "a furnishing of goods, services, or facilities between the plan and a party in interest," which is the only prohibition that allegedly applies here. *See* ROA.21 at ¶ 29 (alleging a prohibited transaction under ERISA §406(a)(1)(C), 29 U.S.C. §1106(a)(1)(C)).

Accordingly, the district court correctly rejected Plaintiffs' attempt to transform the assessment of the surrender charge into a stand-alone prohibited transaction.

### C.     Issue 5: The Court can affirm on the alternative ground that Plaintiffs seek impermissible legal relief.

In the proceedings below, VALIC and VFA moved for dismissal of the prohibited-transaction claim because Plaintiffs sought impermissible legal relief. ROA.503–04; ROA.652–54. Under long-standing precedent, claims asserted under § 502(a)(3) for prohibited transactions are limited to equitable relief. *Mertens*, 508 U.S. at 262–63. Here, Plaintiffs sought monetary relief in an amount equal to all fees paid to VALIC. *See* ROA.21 at ¶ 29. That is the "classic form of purely legal relief" unavailable under Section 502(a)(3), so Plaintiffs' request for that relief is grounds to affirm dismissal. *See Central States, Se. & Sw. Areas Health & Welfare*

*Fund v. Health Special Risk, Inc.,* 756 F.3d 356, 359 (5th Cir. 2014) (affirming a

12(b)(6) dismissal of § 502(a)(3) that "fail[ed] to seek equitable relief").

Nor can Plaintiffs avoid dismissal by pointing to the complaint's use of

equitable terminology like "accounting" and "equitable disgorgement." *See, e.g.*,

ROA.21 at ¶ 29. Those labels are irrelevant because "[s]imply framing a claim as

equitable . . . is insufficient to escape a determination that the relief sought is legal."

*See Central States,* 756 F.3d at 361. And even if the labels mattered, they would not

help Plaintiffs because "an accounting" and "disgorgement" are both "forms of

restitution," *Teets v. Great-W. Life & Annuity Ins. Co.*, 921 F.3d 1200, 1225 (10th

Cir. 2019) (quotations omitted), and restitution is legal relief unless a plaintiff seeks

money specifically "'identified as belonging in good conscience to the plaintiff'"

that can "'clearly be traced to particular funds or property in the defendant's

possession.'" *Central States*, 756 F.3d at 362 (quoting *Great-W. Life & Annuity Ins.*

*Co. v. Knudson*, 534 U.S. 204, 213 (2002)); *see also JPMorgan Chase Severance*

*Plan v. Romo*, No. H-21-1685, 2021 WL 4442519, *8 (S.D. Tex. Sept. 28, 2021).

The complaint does not allege that the "fees" Plaintiffs seek to recover can be traced

to a particular fund "received from" or "promised to" them, much less limit their

request for relief to such fund. *See Central States,* 756 F.3d at 367. That "restitution

is not equitable," so it cannot support a claim for relief under § 502(a)(3).

To resist this conclusion, Plaintiffs argued below that the complaint's generic reference to "other appropriate equitable relief," ROA.23 at ¶ 4, includes requests for injunctive relief and rescission, and also that they could amend the complaint to add "allegations about [their] ability to trace the Plan's assets." ROA.734. Neither argument has merit. The surrender charge was imposed years ago, and Plaintiffs do not explain how rescission is possible, how injunctive relief would remedy that past harm, or even how they have standing to make those arguments. *See Deutsch v. Annis Enterprises, Incorporated*, 882 F.3d 169, 173 (5th Cir. 2018) ("Merely having suffered an injury in the past is not enough" to establish standing to seek injunctive relief).

And with respect to traceability, Plaintiffs' proposed additions to the complaint do not suggest the surrender charge can be traced "*to* a particular fund" as required for equitable restitution. *See Central States*, 756 F.3d at 366 (emphasis added). Instead, those allegations show that Plaintiffs do *not* seek to recover from the "Separate Account" that held assets for the Plan's participants before the annuity was terminated, but rather from "assets of VALIC *other than those* in the Separate Account or any other segregated asset account." ROA.727–28 (quotations omitted) (emphasis added). Including such an allegation would only worsen the complaint's problem by confirming that Plaintiffs seek recovery from VALIC's "general assets" instead of permissible equitable relief from either VALIC or VFA. *Central States*,

41

756 F.3d at 366; *see also Coop. Ben. Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 332 (5th Cir. 2004) (to properly assert a claim for equitable relief, Plaintiffs must plead facts showing "specifically identifiable funds" that are "within the possession and control" of VALIC—not seek monetary damages from VALIC's "assets generally").

Accordingly, if Plaintiffs could otherwise state a claim for a prohibited transaction (they cannot), the judgment should still be affirmed due to the unavailability of permissible equitable relief. *See Ferrer v. Chevron Corp.*, 484 F.3d 776, 780–81 (5th Cir. 2007) (The Court "may affirm a district court's dismissal based on rule 12(b)(6) on any basis supported by the record").

## IV.    Issue 4: The district court did not abuse its discretion by denying leave to amend.

Plaintiffs' final issue challenges the district court's denial of leave to amend, which they concede is reviewed "for an abuse of discretion."[25] Appellants' Br. 21. Plaintiffs claim they should not "be penalized" for failing to amend during the 21 months their case was pending because they thought "the complaint already stated viable claims" and it would have been "impossible" to cure the complaint's

---

[25] Despite this concession, Appellants' primary authority is an out-of-circuit decision that conducted a de novo review. *See* Appellants' Br. 43–46 (repeatedly citing a Seventh Circuit decision that conducted a "de novo review of the legal basis for" a "futility-based denial[]" of leave to amend, *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. In.*, 786 F.3d 510, 524 (7th Cir. 2015)).

deficiencies "without first knowing how, or even if, the court might find the complaint deficient." *See* Appellants' Br. 44–45.

If Plaintiffs truly believed they could salvage their claims against VALIC[26] with the "additional allegations and alternative legal theories" mentioned in their response to VALIC's motion to dismiss, *see* Appellants' Br. 45 (citing ROA.710–13, 733–34, they should have amended the complaint as a matter of course after VALIC filed its first motion to dismiss, *see* Fed. R. Civ. P. 15(a)(1)(b), with leave of court during the 60-day period allowed under the Eastern District's scheduling order, *see* ROA.27, or upon a showing of "good cause" in the 19 months that followed, *id.* Instead, Plaintiffs "chose not to amend" and simply made "generic and equivocal" predictions about amendments they could "potentially" make, and they still cannot describe a potentially viable amendment in any level of detail. ROA.1331. The district court did not abuse its discretion in finding that Plaintiffs' decision to withhold their "additional allegations and alternative legal theories" in reserve during the 21 months the case was pending constituted undue delay.

---

[26] Plaintiffs' statement of the case mentions a request to amend their claim against VFA, *see* Appellants' Br. 9 n. 4, but their argument does not suggest that they could "amend [their] complaint to overcome the 12(b)(6) dismissal" of that claim. *Cinel v. Connick*, 15 F.3d 1338, 1346 (5th Cir. 1994). Thus, Plaintiffs offer "no basis on which" the Court could "find an abuse of discretion by the district court." *Id.*; *see also Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 398–99 (5th Cir. 2001) (concluding that an appellant "abandoned" an issue by "noting only that it 'adopts and incorporates by reference its argument below'").

## CONCLUSION

Accordingly, the district court's judgment should be affirmed.

Respectfully submitted,

MCDOWELL HETHERINGTON LLP

*/s/ David T. Mcdowell*
David T. McDowell

*Attorney for Defendants–Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,646 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fifth Circuit Rule 5, with 10,596 words counted by the software used to prepare the document and an additional 50 words appearing in a pdf screenshot.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ David T. McDowell*
David T. McDowell