NO. 22-20540

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

D. L. MARKHAM DDS, MSD, INCORPORATED 401(K) PLAN; D.L.
MARKHAM DDS, MSD, INCORPORATED, AS PLAN ADMINISTRATOR,
*Plaintiffs-Appellants*

v.

VARIABLE ANNUITY LIFE INSURANCE COMPANY; VALIC FINANCIAL
ADVISORS, INCORPORATED,
*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
Case No. 4:22-cv-00974

---

**REPLY BRIEF FOR APPELLANTS**

---

Chris Baker
Robert Dolinko
Baker Curtis & Schwartz, PC
1 California Street, Suite 1250
San Francisco, CA 94111
(415) 433-1064

John S. Edwards, Jr.
Ajamie LLP
711 Louisiana Street, Suite 2150
Houston TX 77002
(713) 860-1600

David F. Crutcher
Law Office of David F. Crutcher
790 Mission Street
San Rafael, CA  94901
(415) 254-3143

**Attorneys for Appellants
D.L. Markham, DDS, MSD, Inc.
401(k) Plan and D.L. Markham,
DDS, MSD, Inc., as plan
administrator**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

ARGUMENT ....................................................................................1

I.      VALIC Was A Fiduciary When It Deliberated And Assessed The
        Termination Fee..........................................................................1

II.     VALIC Was A Party In Interest By Virtue Of The Service Provider
        And/Or Annuity Agreements With The Plan ...................................4

        A.      The Literal Reading of § 1106(a)(1)(C) Is the Correct Reading .........4

        B.      The Definition of Service Provider Does Not Turn on
                Whether the Provider Is an "Insider" ...................................6

        C.      The "Establishment of a Plan" Exemption Demonstrates
                the Present Tense Definition of Party in Interest Should
                Be Read to Include the Future Tense in Accordance with
                the Dictionary Act ...............................................................10

        D.      The 2021 Amendments to § 1108(b)(2) Demonstrates New
                Service Providers Have Always Been Parties in Interest ..................11

        E.      The Supreme Court's Reference to Plan Insiders in *Lockheed*
                Does Not Dictate the Outcome Here...................................13

III.    VALIC Was A Party In Interest When Furnishing Services To The
        Plan, Including When It Transferred The Plan's Assets To A
        Successor Provider.........................................................................16

IV.     The Court Should Defer To The DOL's Interpretation Of
        The Statute ...................................................................................19

V.      The Court Cannot Review Issues Concerning VFA And Equitable
        Relief Because The District Court Did Not Decide Them............................20

VI.     Plaintiffs Adequately Pled A Claim For Equitable Relief ............................21

VII.   The District Court Erred In Denying Leave To Amend ............................... 23

VIII.  The Court Should Enforce ERISA's Plain Meaning Even In The Face Of Policy Disagreements ....................................................... 25

CONCLUSION ............................................................................... 27

CERTIFICATE OF SERVICE ....................................................... 29

CERTIFICATE OF COMPLIANCE ............................................. 30

# TABLE OF AUTHORITIES

## Cases

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022) ................................................................6

*C.I.R. v. Keystone Consol. Industries Inc.*,
  508 U.S. 152 (1993)............................................................................8

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v.*
  *Health Special Risk. Inc.*,
  756 F.3d 356 (5th Cir. 2014) .............................................................21

*Cohens v. State of Virginia*,
  19 U.S. 264 (1821)..............................................................................15

*Comerica Bank v. Voluntary Employee Benefits Associates, Inc.*,
  2012 WL 12948705 (N.D. Ga. Jan. 11, 2012).....................................5

*Compania General de Tabacas de Filipinas v. Collector of Internal Revenue*,
  275 U.S. 87 (1927)..............................................................................27

*Companion Property and Cas. Ins. Co. v. Palermo*,
  723 F.3d 557 (5th Cir. 2013) .............................................................20

*David v. Alphin*,
  704 F.3d 327 (4th Cir. 2013) .............................................................16

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) ...............................................................1

*Divane v. Northwestern University*,
  2018 WL 2388118 (N.D. Ill. May 25, 2018).......................................6

*Falberg v. Goldman Sachs Group, Inc.*,
  2020 WL 3893285 (S.D.N.Y. Jul. 9, 2020).........................................18

*Fish v. GreatBanc Tr. Co.*,
  749 F.3d 671, 685-86 (7th Cir. 2014).................................................26

*Fleming v. Rollins*,
    2023 WL 2170815 (N.D. Ga. Jan. 30, 2023)...........................................................6

*Gearlds v. Entergy Services, Inc.*,
    709 F.3d 448 (5th Cir. 2013) ...............................................................14

*Gobeille v. Liberty Mut. Ins. Co.*,
    577 U.S. 312 (2016)...............................................................15

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)........................................................ 22, 23

*Harris Trust and Sav. Bank v. Salomon Smith Barney Inc.*,
    530 U.S. 238 (2000)................................................ 14, 21, 22

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield*,
    751 F.3d 740 (6th Cir. 2014) ...............................................4

*Intel Corp. Inves. Policy Committee v. Sulyma*,
    140 S.Ct. 768 (2020)...............................................................15

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996)........................................... 8, 13, 14, 16

*LoPresti v. Terwilliger*,
    126 F.3d 34 (2d Cir. 1997) .................................................2

*Masat v. United States*,
    745 F.2d 985 (5th Cir. 1984) ...............................................20

*Matter of Kosadnar*,
    157 F.3d 1011 (5th Cir. 1998) ............................................17

*Michigan v. E.P.A.*,
    576 U.S. 743 (2015)...............................................................20

*Moore v. New York Cotton Exchange*,
    270 U.S. 593 (1926)...............................................................17

*PAE Gov't Services, Inc. v. MPRI, Inc.*,
514 F.3d 856 (9th Cir. 2007) .................................................................24

*Peters v. Aetna*,
2 F.4th 199 (4th Cir. 2021) ........................................................... 18, 19

*Rollins v. C.I.R.*,
T.C. Memo. 2004-260, 2004 WL 2580602 (United States Tax Court 2004) ........7

*Ronches v. Dickerson Employee Benefits, Inc.*,
2009 WL 10669571 (C.D. Cal. Oct. 30, 2009) .......................................6

*Schapker v. Waddell & Reed Financial, Inc.*,
2018 WL 1033277 (D.Kan. Feb. 22, 2018)...........................................18

*Seaway Food Town, Inc. v. Med. Mut. of Ohio*,
347 F.3d 610 (6th Cir. 2003) ...............................................................4

*Stearn v. Select Comfort Retail Corp.*,
763 F.Supp.2d 1128 (N.D. Cal. 2010)..................................................24

*Teets v. Great-West Life & Annuity Co.*,
921 F.3d 1200, 1222 (10th Cir. 2019) ................................................26

*United States v. Conservation Chemical Co.*,
653 F.Supp. 152 (W.D. Mo 1986) ........................................................5

*United States v. Vargas-Soto*,
35 F.4th 979 (5th Cir. 2022) ..............................................................15

*United States ex rel Riley v. St. Luke's Episcopal Hosp.*,
355 F.3d 370 (5th Cir. 2004) .............................................................24

*Vellali v. Yale University*,
308 F.Supp.3d 673 (D.Conn. 2018).....................................................18

*Wright v. Oregon Metallurgical Corp.*,
360 F.3d 1090 (9th Cir. 2004) ...........................................................17

**Statutes**

1 U.S.C. § 1 ...................................................................................10

26 U.S.C. § 4941 ...............................................................................7

26 U.S.C. § 4941(d) ..........................................................................7

26 U.S.C. § 4946(a) ..........................................................................7

26 U.S.C. § 4975(c) ..........................................................................8

26 U.S.C. § 4975(e)(2) ......................................................................8

29 U.S.C. § 1002(14) ............................................................ 7, 10, 19

29 U.S.C. § 1002(14)(A), (C), (D) ...................................................10

29 U.S.C. § 1002(14)(B) ................................... 4, 6, 10, 11, 12, 13

29 U.S.C. § 1002(21) ........................................................................25

29 U.S.C. § 1002(21)(A)(iii) .............................................................2

29 U.S.C. § 1002(21)(i) ...................................................................24

29 U.S.C. § 1104(a)(1)(D) .................................................................3

29 U.S.C. § 1106 ........................... 7, 9, 11, 12, 16, 17, 18, 19, 26

29 U.S.C. § 1106(a) .......................................... 7, 11, 13, 25, 26

29 U.S.C. § 1106(a)(1)(A) .................................................................5

29 U.S.C. § 1106(a)(1)(B) .................................................................5

29 U.S.C. § 1106(a)(1)(C) ....................................... 4, 5, 6, 16

29 U.S.C. § 1106(a)(1)(D) ....................................... 5, 16, 24

29 U.S.C. § 1106(b) ................................................................................3

29 U.S.C. § 1108 ................................................................ 12, 13, 19, 26

29 U.S.C. § 1108(a) .............................................................................13

29 U.S.C. § 1108(a)(2) ..................................................................... 9, 15

29 U.S.C. § 1108(a)(2)(A) ...................................................................10

29 U.S.C. § 1108(b) .............................................................................12

29 U.S.C. § 1108(b)(2) .........................................................................11

29 U.S.C. § 1108(b)(2)(A) .............................................................. 12, 27

29 U.S.C. § 1108(b)(2)(B) .............................................................. 11, 12

29 U.S.C. § 1132(a)(3) .........................................................................21

Uniform Commercial Code 2-103(a) .....................................................5

**Rules**

F.R.C.P. 15(a)(2) ..................................................................................23

**Regulations**

29 CFR § 2550 .....................................................................................19

29 CFR § 2550.408b-2 ..........................................................................12

29 CFR § 2550.408b-2(c)(1)(i) ..............................................................12

29 CFR § 2550.408b-2(c)(1)(iii) ....................................................... 9, 19

29 CFR  § 2550.408b-2(c)(1)(v)(A) .......................................................19

29 CFR § 2550.408b-2(c)(2) ............................................................ 12, 13

## Other Authorities

Cambridge University Press. Encompass. Cambridge Advanced Learner's
    Dictionary & Thesaurus, Cambridge University Press, n.d.,
    https://dictionary.cambridge.org/dictionary/english/encompass .........................14

H.R. Conf. Rep. 93-1280, 1974 U.S.C.C.A.N. 5038, 1974 WL 11542
    (Leg.Hist.) ........................................................................................................9

Merriam-Webster. Encompass." Merriam-Webster.com Dictionary, Merriam-
    Webster, n.d., https://www.merriam-webster.com/dictionary/encompass...........14

Preamble to Final Rule, Fed. Reg., Vol. 77, No. 23, p. 5649 (Feb. 3, 2012) ..........12

S.Rep. 93-383, 1974 U.S.C.C.A.N. 4889, 1973 WL 12551 (Leg.Hist.) ...................8

# ARGUMENT

VALIC states this case is about the sale of an annuity.  It is actually about securing worker retirement income.

## I.  VALIC Was A Fiduciary When It Deliberated And Assessed The Termination Fee

Appellees VALIC and VFA ("VALIC") cite numerous cases for the rule that a plan service provider does not act in a fiduciary capacity by merely accepting previously bargained-for compensation.  (VALIC Br. 19, n.17).  In none of those cases did the service provider reserve discretion to waive or reduce its fee.  For example, the service provider in *Depot, Inc. v. Caring for Montanans, Inc.,* 915 F.3d 643 (9th Cir. 2019) established a set fee (an insurance premium) to which the plan agreed, and then collected the precise amount agreed.  Although the service provider could raise the premium, it could do so only with 60 days' notice.  This provided the plan an opportunity to avoid the fee.

Here, the maximum termination fee was set at 5%, but then expressly and prominently made completely discretionary.  VALIC reserved the authority to set the fee between zero and 5% expressly in the governing documents (ROA.140, ROA.309), established procedures for determining waivers and reductions ("any such waiver will be made by the Board of Directors;" ROA.140), and acted on those procedures by deliberating on whether the Plan would receive a waiver or

reduction, applying whatever conditions it wished to apply. This is fiduciary conduct.

The express reservation of discretionary authority induces named fiduciaries to engage the service provider with an expectation that the waiver provision may be invoked on its behalf.  VALIC had no reason to include the waiver language other than to create that expectation in its clients, possibly worried about being locked into an unfavorable arrangement, that the contracting plan will not necessarily be subject to a termination penalty should it later decide to terminate VALIC.  If, as the district court concluded, there is no substantive difference between contracts that have waiver provisions and those that don't, then why have them?  The only purpose to expressly reserving the discretion to waive is to create an inference in the hiring fiduciary that fees will be waived.

The words matter under 29 U.S.C. § 1002(21)(A)(iii), and VALIC is free to avoid fiduciary status by avoiding provisions that confer discretionary authority.[1] Inferring that this result frustrates ordinary commercial transactions, as VALIC and

---

[1] VALIC argues that discretionary authority over imposition of the fee does not make it a fiduciary under 29 U.S.C. § 1002(21)(A)(iii) because such authority is not related to administration of the plan.  (VALIC Br. 22-23).  Deciding whether the Plan should pay a vendor's bill – here VALIC's surrender fee – is a quintessential act of plan administration. *See, e.g., LoPresti v. Terwilliger*, 126 F.3d 34, 40-41 (2d Cir. 1997).

their supporting amici suggest, is absurd. Just leave out the contract language conferring discretion.

The fee waiver and reduction discretion was an express part of the bargain that was memorialized in the contract between the Plan and VALIC, and the fiduciary consequences of those words cannot be ignored. "[A] fiduciary shall discharge his duties with respect to a plan … in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]." 29 U.S.C. § 1104(a)(1)(D). Thus, VALIC had an obligation to apply the discretionary waiver and reduction reservation by waiving the termination penalty. Imposing it constituted self-dealing discretion that violated the provisions 29 U.S.C. § 1106(b).

VALIC argues that the discretion over the termination penalty rested with Plaintiffs when they decided to terminate the arrangement. (VALIC Br. 21). Yes, Markham acted as a responsible fiduciary when it instructed VALIC to transfer the Plan's assets to a successor provider. Plaintiffs believed the Plan could obtain a better overall value with a successor provider. VALIC, however, acted as a fiduciary when it transferred those assets, conditioned their transfer on a separate agreement, and, in the exercise of its delegated discretion, paid itself a termination fee.

Finally, VALIC misrepresents Plaintiffs' reliance on *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield,* 751 F.3d 740 (6th Cir. 2014). Plaintiffs did not cite *Hi-Lex* because the third-party administrator exercised discretion by inflating claims that caused its fee to increase. (Markham Br. 17). Plaintiffs cite it because, although Blue Cross argued that all it was doing was collecting fees as provided in its contract, the court cited the record showing that its underwriters had "flexibility to determine" how and when fees were charged to its clients. *Hi-Lex* at 744. The court went on to say:

> while simple adherence to a contract's term giving a party 'the unilateral right to retain funds as compensation' does not give rise to fiduciary status, a 'term [that] authorizes [a] party to exercise discretion with respect to that right' does." *Id.* quoting *Seaway Food Town, Inc. v. Med. Mut. of Ohio,* 347 F.3d 610, 619 (6th Cir. 2003).

This reasoning is spot-on here. Because VALIC's contract contains a term delegating absolute discretion over its termination fee, that delegated discretion gives rise to fiduciary status with respect to the decision to impose the fee.

## II.    VALIC Was A Party In Interest By Virtue Of The Service Provider And/Or Annuity Agreements With The Plan

### A.    The Literal Reading of § 1106(a)(1)(C) Is the Correct Reading

As explained in the opening brief, when the § 1002(14)(B) definition of party in interest is inserted into § 1106(a)(1)(C), the phrase "person providing services to such plan" refers back to the plan with whom the provider has

transacted.  It is the relationship of the parties to one another with respect to the transaction that matters, not the relationship *before* the transaction. (Markham Br. 32).  Again, it is commonplace to regulate a transaction or relationship through reference to its parties.  *See, e.g., United States v. Conservation Chemical Co.* 653 F.Supp. 152, 211 (W.D. Mo 1986) ("[T]he status of the parties, i.e., promisor, promisee and/or third-party beneficiary, is determined at the time the contract is formed."); Uniform Commercial Code 2-103(a) (regulating the sale of goods and defining "'buyer' as a person who buys or contracts to buy goods").

The Chamber argues § 1106(a)(1)(C) is different because "the simultaneously occurring events must somehow *cause* one another." (Chamber Br. 12).  But this assumes that ERISA's definition of service provider describes *an action* (providing services) as opposed to *a thing*.  "A person providing services to such plan" is a thing.  This definition of party in interest is not circular when applied to § 1106(a)(1)(A), (B) and (D).  Absent an exemption, a plan cannot sell property, loan money, or transfer assets – all *actions* – to a service provider (a thing).  Section 1106(a)(1)(C) has a similar structure.  Absent an exemption, the furnishing of services is the *action*, and the provider of services is the thing.

ERISA's "statutory language does not say that the contract that causes the service provider to be a party in interest must be different than the prohibited transaction." *Comerica Bank v. Voluntary Employee Benefits Associates, Inc.*,

5

2012 WL 12948705 *18 n. 27 (N.D. Ga. Jan. 11, 2012). "Limiting liability under §

1106 to service providers who have a preexisting relationship would not only

contravene the clear language of the statute, but would not be rationally related to

'Congress's overriding concern with the protection of plan participants and

beneficiaries.'" *Ronches v. Dickerson Employee Benefits, Inc.,* 2009 WL

10669571 *18 (C.D. Cal. Oct. 30, 2009); *Fleming v. Rollins*, 2023 WL 2170815

n.8 (N.D. Ga. Jan. 30, 2023) ("the Court is not persuaded that it should require

Plaintiffs to plead anything beyond what the clear statutory definition of a 'party in

interest' requires.").

     "Under a literal reading of §§ 1002(14)(B) and 1106(a)(1)(C), ERISA would

prohibit payments by a plan to an entity providing services for the plan. . . . ."

*Albert v. Oshkosh Corp.*, 47 F.4th 570, 584 (7th Cir. 2022).  The literal reading is

the correct reading, but with this important, textually-based, caveat.  The

prohibition is not absolute, but rather limited to *unreasonable* transactions with

entities providing services to the plan.  *Divane v. Northwestern University*, 2018

WL 2388118, *10 (N.D. Ill. May 25, 2018) (explaining definition is not as circular

as it appears because only unreasonable transactions with service providers are

prohibited) *reversed on other grounds*, 63 F.4th 615 (7th Cir. 2023).

    **B.**    **The Definition of Service Provider Does Not Turn on Whether the Provider Is an "Insider"**

VALIC argues that ERISA's definition of party in interest does not include

initial service providers because only "plan insiders," i.e., those a fiduciary might be inclined to favor at the expense of plan beneficiaries," qualify. (VALIC Br. 25-26).  The amici go further and argue that *no* third-party service provider should be a party in interest because "[i]t makes plan fiduciaries susceptible to a class-action lawsuit any time they engage with a completely disinterested service provider at arm's length to obtain needed services for the plan."  (Chamber Br. 6-7, 14-20).  But section 1106(a) is not limited to "plan insiders" and it does not exempt arms-length transactions from its coverage.  Quite the opposite.

The language and structure of ERISA's prohibited transaction/exemption provisions are derived from the Tax Reform Act of 1969, which imposes a tax on specified transactions between private foundations and "disqualified persons." *E.g., Rollins v. C.I.R.*, T.C. Memo. 2004-260, 2004 WL 2580602 **6-8 (United States Tax Court 2004); 26 U.S.C. § 4941.  But there are two relevant and material differences between the Tax Reform Act and ERISA.  First, the Tax Reform Act expressly defines its taxable transactions as "self-dealing." 26 U.S.C. § 4941(d).  ERISA uses the broader term "prohibited transactions."  29 U.S.C. § 1106.  Second, the Tax Reform Act includes insiders in its definition of "disqualified persons" but makes no mention of service providers. 26 U.S.C. § 4946(a).  ERISA expressly includes both insiders <u>and</u> service providers as parties in interest.  29

U.S.C. § 1002(14).[2]  These differences between Acts, passed five years apart, point to the same conclusion.  Congress intended the definition of "party in interest" in ERISA to extend beyond self-dealing insiders.

Congress's goal "was to bar <u>categorically</u> a transaction that was likely to injure the pension plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996); *C.I.R. v. Keystone Consol. Industries Inc.*, 508 U.S. 152, 160 (1993).  With ERISA, it abandoned the amorphous "arms-length standard of conduct" rule, *C.I.R.*, supra, at 160, and "established definitions for prohibited transactions that will make it more practical to enforce the law.  [ERISA's] definitions of prohibited transactions, and the exceptions from these transactions, also take account of the unique situation of employee benefit trusts."  S.Rep. 93-383, 1974 U.S.C.C.A.N. 4889, 1973 WL 12551 (Leg.Hist.) at *4917 (cited in *C.I.R.*, supra, at 160).

One expressly-identified unique situation is service provider arrangements.  As the Chamber of Commerce explains, "plan sponsors and fiduciaries heavily rely on third parties to provide a wide array of services, including 'legal, accounting, trustee/custodial, recordkeeping, investment management, [and] investment education or advice' services." (Chamber Br. 17-18).  ERISA understands that

---

[2] Similarly, and unlike the Tax Reform Act, ERISA's IRS provision uses the broader term "prohibited transactions" instead of "self-dealing" and expressly includes service providers in the definition of "disqualified persons." 26 U.S.C. §§ 4975(c), (e)(2).

service provider arrangements are necessary, but also dangerous. When they are *unreasonable*, they are likely to injure the plan and are thus prohibited by § 1106. When they are *reasonable*, they are exempt from § 1106 and allowed. 29 U.S.C. § 1108(a)(2). And, to be reasonable, Congress expects that "such arrangements will allow the plan to terminate the services, etc., on a reasonably short notice under the circumstances so the plan will not become locked into an arrangement that may become disadvantageous." H.R. Conf. Rep. 93-1280, 1974 U.S.C.C.A.N. 5038, 1974 WL 11542, * 5092 (Leg.Hist). For this reason, 29 CFR § 2550.408b-2(c)(1)(iii) prohibits termination penalties like VALIC's surrender fee.

VALIC argues that ERISA permits unreasonable *new* provider arrangements because new providers are plan *outsiders*. In the real world, so are existing providers. The notion that a plan fiduciary, like the Markham's, ever might be inclined to favor a corporate behemoth, like VALIC, at the expense of its beneficiaries (particularly when those beneficiaries include themselves) is far-fetched. Yet ERISA unambiguously *includes* service providers in the party in interest definition, regardless of their insider/outsider status.

Because *existing* providers are parties in interest, it inevitably follows that so, too, are *new* service providers. To treat them differently is irrational and contrary to ERISA's text and purpose.

**C.    The "Establishment of a Plan" Exemption Demonstrates the Present Tense Definition of Party in Interest Should Be Read to Include the Future Tense in Accordance with the Dictionary Act**

VALIC argues that the § 1108(a)(2)(A) exemption for *contracting or making reasonable arrangements with a party in interest for legal, accounting or other services necessary for the establishment of the plan*, has meaning, even if future providers are excluded, because a *non-provider* party in interest might provide plan establishment services. (VALIC Br. 33).

This argument ignores that *all* the § 1002(14) party in interest definitions are written in the present tense.  They are (A) a fiduciary, counsel or employee *of such plan*, (B) a person providing services *to such plan*, (C) an employer whose employees *are* covered *by such plan*, and (D) a union whose members *are* covered *by such plan*.  Thus, even under VALIC's argument, the exemption for "services necessary for the establishment of the plan" only makes sense if, consistent with the Dictionary Act, the use of the present tense in § 1002(14) "includes the future as well as the present."  1 U.S.C. § 1.  If a non-existent plan's *future* fiduciary, counsel, employee, employer, and union are all parties in interest (such that their service arrangements must be reasonable), then so is its *future* (or new) service provider.  To construe the present tense as including the future with respect to § 1002(14)(A), (C) and (D), but not (B), runs counter to commonsense and the canons of construction.  This is particularly so because the focus of the §

10

1108(a)(2)(A) exemption is service arrangements with a nascent or existing plan, and § 1002(14)(B) treats a person providing services to such plan as a party in interest.

### D. The 2021 Amendments to § 1108(b)(2) Demonstrates New Service Providers Have Always Been Parties in Interest

The 2021 amendments to 1108(b)(2) in the Consolidated Appropriations Act (the "CAA") states that *no contract or arrangement* for services between a covered service provider and a group health [i.e., welfare] plan, and *no extension or renewal* of such a contract or arrangement, is reasonable within the meaning of § 1108(b)(2), and thus exempt from § 1106, unless certain requirements are met. Among these requirements is the obligation to disclose specified information "reasonably in advance of the date on which the contract or arrangement with the [welfare] plan is *entered into*, and *extended* or *renewed.*" 29 U.S.C. § 1108(b)(2)(B)(v)(I).

VALIC and its amici argue that the 2021 amendments to § 1108(b)(2) do not suggest that Congress understood § 1106(a) applies to new service providers. In support, they point to the phrase "covered service providers" instead of "parties in interest," and Congress' failure to apply the 2021 amendments to pension plans as well as welfare plans. (VALIC Br. 32).

The 2021 exemption requirements for covered service providers set forth in § 1108 only make sense if, without the exemption, the transaction is prohibited by

§ 1106. Indeed, § 1108(b) states "the prohibitions provided in § 1106 of this title shall not apply" to arrangements that meet the requirements of § 1108(b)(2)(A) and (B). Section 1108(b)(2)(B) alone provides several additional carve-outs to § 1106. See 29 U.S.C. §§ 1108(b)(2)(B)(vii), (viii)(I).

Congress' use of the phrase "covered service providers" instead of "parties in interest" does not change this analysis. Under §§ 1002(14)(B), 1106, and 1108, all service providers are parties in interest, but only a subset of these providers (the covered ones) must meet the disclosure requirements of § 1108(b)(2)(B) for their arrangements to be reasonable. This subset of providers are those that receive a minimum amount of compensation from group health (or welfare) plans for brokerage or consulting services. 29 U.S.C. § 1108(b)(2)(B)(ii)(I)(bb).

Congress did not revise the pension disclosure rules in enacting the CAA because the DOL regulation already addressed the issue of pension plans. Like the CAA, it states: "No contract or arrangement for services between a [pension] plan and a *covered service provider, nor any extension or renewal,* is reasonable within the meaning of section 408(b)(2) of the Act … unless …" (Emph. suppl.). 29 CFR § 2550.408b-2(c)(1)(i). This regulation, issued in final form in 2012, first supplied the very term, "covered service provider," that Congress adopted for the 2021 amendments. And while Congress could have made the pension disclosure rules statutory in 2021 along with the new welfare disclosure rules, it was

unnecessary.  Congress's purpose in 2021 was to plug the hole that existed for disclosures to welfare plans due to the Secretary having "Reserved" the subsection dedicated to welfare plan disclosure rules in 2012.  29 CFR § 2550.408b-2(c)(2); Preamble to Final Rule, Fed. Reg., Vol. 77, No. 23, p. 5649 (Feb. 3, 2012).

It is not plausible that Congress intended to change the simple definition of service provider in § 1002(14)(B) to include new service providers for welfare plans (but not pension plans), and then extended the proscriptions of § 1106(a) to initial transactions with these providers, by revising § 1108 to require disclosure obligations as a condition of treating their arrangements as reasonable.  It is unimaginable that Congress would have so indirectly changed §§ 1002(14)(B) and 1106(a).  Because § 1108(a) has always applied to new and existing service providers to all benefit plans, and because the DOL had already enacted disclosure rules of pension plans while reserving action on disclosure rules for welfare plans, Congress understood that disclosure rules for welfare plans were all that was needed.  So that is what Congress addressed.

### E.    The Supreme Court's Reference to Plan Insiders in *Lockheed* Does Not Dictate the Outcome Here

Despite the above, VALIC and its amici argue this Court is bound by the Supreme Court's passing dicta in *Lockheed* that § 1106(a) concerns "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length."  The context of *Lockheed*, of

course, was whether a plan's payment to a participant was a "transaction" that unlawfully benefited the employer, a party in interest.  In concluding the payment was not, the Court focused on the nature of the transaction (non-commercial, to a participant), not the definition of party in interest.

Justice Thomas's later statement in *Harris Trust* – that "Congress defined 'party in interest' to encompass those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries," *Harris Trust and Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 242 (2000) -- cannot be read, even as dicta, to mean Congress defined party in interest to encompass *only* entities a fiduciary might decide to favor.  "Encompass" means "includes," not "exhaustively enumerates."[3]

While this Court gives "serious consideration to a recent and detailed discussion of the law by a majority of the Supreme Court," *Gearlds v. Entergy Services, Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (cleaned up), the 27-year-old *Lockheed* dicta is not detailed, recent, or from a current majority.

---

[3]   Cambridge University Press. Encompass. Cambridge Advanced Learner's Dictionary & Thesaurus, Cambridge University Press, n.d., https://dictionary.cambridge.org/dictionary/english/encompass. Accessed 7 May 2023; Merriam-Webster. "Encompass." Merriam-Webster.com Dictionary, Merriam-Webster, n.d., https://www.merriam-webster.com/dictionary/encompass. Accessed 7 May 2023.

The Supreme Court holds that dicta is not binding, and with good reason: "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." *Cohens v. State of Virginia*, 19 U.S. 264, 399 (1821).  Consistent with this rule, this Court recently concluded it is not bound by Supreme Court dicta.  *United States v. Vargas-Soto*, 35 F.4th 979, 997 (5th Cir. 2022) (citations omitted).

Recent Supreme Court precedent emphasizes that courts must enforce ERISA's "plain and unambiguous statutory language according to its terms." *Intel Corp. Inves. Policy Committee v. Sulyma*, 140 S.Ct. 768, 776 (2020) (cleaned up). "The principal object of ERISA is to protect plan participants and beneficiaries. And in enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employee benefits from accumulated funds." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 324 (2016) (cleaned up).  Given ERISA's text and purpose, recent Supreme Court decisions emphasizing these factors (without extra-textual reference to "plan insiders"), the Department of Labor's considered position on this issue, the DOL regulations that rely on its position, and the 2021 Amendments to § 1108(a)(2), the

Court should not extend the *Lockheed* dicta to the present case. The Court should decide this issue on the merits, and the merits favor Plaintiffs.

### III. VALIC Was A Party In Interest When Furnishing Services To The Plan, Including When It Transferred The Plan's Assets To A Successor Provider

VALIC argues that, while it may have been a party in interest at the time it transferred the Plan's assets to a different platform, the transfer of these assets was not a transaction that constitutes the furnishing of services. (VALIC Br. 39).

The assets did not transfer themselves. Thus, VALIC furnished a service when it transferred the Plan's assets to a successor provider. ROA.16-17. VALIC also paid itself 4.5% of the Plan's assets as the price of the transfer. ROA.15. This was a transaction under any definition. *David v. Alphin*, 704 F.3d 327, 340 (4th Cir. 2013) (citing Merriam Webster dictionary in construing "transaction" under § 1106: "transaction: 1) a: something transacted; especially: an exchange or transfer of goods, services, or funds; ... 2) a: an act, process, or instance of transacting."). Thus, unless exempt, the transfer-of-assets transaction was prohibited by both § 1106(a)(1)(C) (a transaction that constitutes the furnishing of services between the plan and a party in interest) and § 1106(a)(1)(D) (a transaction that constitutes the transfer of plan assets to a party in interest).

VALIC argues against the plain meaning of the term "transaction." It cites: (1) a Supreme Court case that broadly construes former Equity Rule 30 with

respect to a defendant's obligation to assert a "counterclaim arising out of the transaction which is the subject matter of the suit" (*Moore v. New York Cotton Exchange*, 270 U.S. 593, 609 (1926)); (2) a Fifth Circuit bankruptcy case involving recoupment of overpaid commissions, where, "given the equitable nature of the recoupment doctrine, courts have refrained from precisely defining the same-transaction standard, focusing instead on the facts and equities of each case" (*Matter of Kosadnar*, 157 F.3d 1011, 1015 (5th Cir. 1998)); and (3) a Ninth Circuit case concluding that declining to transact is not a transaction (*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (persuading fiduciaries to not sell stock was not a transaction)).  The Court need not ignore the plain meaning of "transaction" based on these cases.

If the Court does construe "transaction" to mean, as in *Moore*, "a series of many occurrences" or "links in a chain which constitutes the transaction," 270 U.S. at 610, then the Plan's transaction with VALIC was absolutely prohibited under § 1106.  The transaction began with the signing of the contracts, continued into other occurrences as contributions were made and VALIC received fees, and ended with the transfer of assets and imposition of the termination fee.  VALIC was inarguably a party in interest in the last two of these three types of "occurrences," all of which, VALIC argues, was the same transaction.  Under this reasoning, it is irrelevant that VALIC did not provide services to the Plan *before* the contracts

were signed. The Markhams still caused the Plan to *engage* in a transaction (the furnishing of services) with a person providing services to the Plan from the start of the contracts through their end.

VALIC argues that every component of a service transaction must occur while the service provider is a party in interest, even though the statute plainly does not require it; even though the imposition of the rule creates striking anomalies so clearly outlined by the Secretary of Labor (DOL Br. 18-25); and even though this case itself illustrates why Congress was seeking to provide some protection to plan participants from inattentive fiduciaries committing participant pensions to the debilitating effects of unreasonable service contracts. A fiduciary breach claim against an inattentive fiduciary is not sufficient protection, which is why § 1106 exists at all.

Case law supports the treatment of fee payments in exchange for services as distinct transactions -- even when made pursuant to a contract. *E.g., Falberg v. Goldman Sachs Group, Inc.*, 2020 WL 3893285 *12-13 (S.D.N.Y. Jul. 9, 2020) (finding plaintiff stated a claim that the fee payments from plan assets were unlawful § 1106 transactions); *Vellali v. Yale University*, 308 F.Supp.3d 673, 689-691 (D.Conn. 2018) (same); *Schapker v. Waddell & Reed Financial, Inc.,* 2018 WL 1033277 *9-10 (D.Kan. Feb. 22, 2018) (same). VALIC's efforts to limit the reach of *Peters v. Aetna*, 2 F.4th 199 (4th Cir. 2021) in this respect fails. *Peters*

reasoned, first, that the subcontractor (Optum) became a party in interest after

entering into a contract with Aetna. *Id.* at 240. It *then* reasoned "Optum could be

liable as a party in interest involved in prohibited <u>transactions</u>," with the

<u>transactions</u> being the bundled rate fees buried in individual claims paid by the

plan. *Id.* at 210, 240.

### IV. <u>The Court Should Defer To The DOL's Interpretation Of The Statute</u>

At the barest minimum, §§ 1002(14), 1106, and 1108 are ambiguous as to

the meaning of service provider and transaction in the present context. Thus, under

*Chevron*, this Court must defer to the Department of Labor's interpretation.

VALIC contends otherwise and describes the 2012 preamble to the Department's

29 C.F.R. § 2550 amendments as a "passing comment" not entitled to deference.

(VALIC Br. 34). This is inaccurate.

The amendments to 29 C.F.R. § 2550 rely on and implement the

Department's considered view that both new and existing service providers are

parties in interest. *E.g.,* 29 C.F.R. § 2550.408b-2(c)(1)(iii)(defining covered

service provider for purposes of 1108 exemption as a service provider that enters

into an arrangement with an employee pension plan); 29 CFR § 2550.408b-

2(c)(1)(v)(A) (requiring initial disclosures "reasonably in advance of the date the

contract or arrangement is *entered into*, and extended or renewed"). If the Court

finds that new service providers are not parties in interest, it will effectively

invalidate the Department's disclosure regulations to the extent they concern initial

contracts because the regulations are premised on an interpretation that treats new

service providers as parties in interest.

"*Chevron* directs courts to accept an agency's reasonable resolution of an

ambiguity in a statute that the agency administers." *Michigan v. E.P.A.*, 576 U.S.

743, 751 (2015).  Here, the Department's interpretation of service provider is more

than reasonable, it is correct.  Under *Chevron*, the Court must defer.

### V.     The Court Cannot Review Issues Concerning VFA And Equitable Relief Because The District Court Did Not Decide Them

This Court's "appellate powers are limited to reviewing issues raised in, *and

decided by*, the district court."  *Companion Property and Cas. Ins. Co. v. Palermo*,

723 F.3d 557, 561 (5th Cir. 2013); *Masat v. United States,* 745 F.2d 985, 988 (5th

Cir. 1984).  The district court did not decide VFA's motion to dismiss.  Rather it

denied VFA's motion as moot, and dismissed both Defendants based only on

VALIC's motion.   ROA.1305.

VALIC asserts that Plaintiffs abandoned their appeal as to VFA.  (VALIC

Br. 25).  VFA is a named appellee (Markham Br. i), the opening brief states this is

an appeal from a final judgment disposing of all claims by all parties, and the

Ruling Presented for Review is the district court's order granting "VALIC's

motion to dismiss as to all defendants. . . ." (Markham Br. 1, 10.)  Because the

district court dismissed the entire action and entered judgment based only on

VALIC's motion, ROA.1334, Plaintiffs ask this Court to reverse the judgment and reinstate the entire action based on the district court's error in granting VALIC's motion. (Markham Br. 46). Thus, if the Court grants Plaintiffs' appeal, the judgment must be reversed as to both VALIC and VFA.

The district court also did not decide whether Plaintiffs adequately pled an equitable remedy with respect to its claim under 29 U.S.C § 1132(a)(3). This Court cannot review the district court's non-decision. If it nevertheless chooses to do so, the Court should conclude Plaintiffs adequately pled an equitable remedy.

## VI.    Plaintiffs Adequately Pled A Claim For Equitable Relief

The original (and only) complaint in this case states that Plaintiffs are asking for equitable relief and cites the specific section of ERISA. Although it denominates the relief by referring to the amount of fees improperly paid to VALIC, it goes on to say that "those fees have been retained by VALIC, and should be returned …" ROA.21 at ¶25. The plaintiff in *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Health Special Risk, Inc.,* 756 F.3d 356 (5th Cir. 2014) was clearly attempting to get the court to compel the payment of damages from no identifiable fund. Plaintiffs, however, asked the district court to compel the payment of money that VALIC wrongfully withheld within the group annuity contract and that can easily be traced to wherever and however VALIC still holds it.

21

And, as Justice Thomas stated in *Harris:*

> "[I]t has long been settled that when a trustee in breach of his fiduciary duty … transfers trust property to a third person, the third person takes the property subject to the trust ...   The trustee … may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom." *Id* at 250.

Certainly, VALIC profited from the prohibited transaction that it was instrumental in causing (Markham did not suggest the termination penalty). VALIC offers no authority denying Plaintiffs the opportunity to trace actual funds held back by VALIC upon its termination.  Whether those remained in the separate account or were moved to another account within VALIC's control, insurance companies are in the business of accounting for money and it is highly likely that those funds, or a substantial portion of them, remain identifiable and recoverable.

VALIC cites *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002) through *Central States* as supporting a finding that Plaintiffs are effectively requesting legal relief.  But the Court found that the defendant's debt in *Great West* was effectively a contract debt not appropriate for legal relief.  *Great West* at 215, 216.  Here, because it would be "unconscientious for the holder [VALIC] of the legal title to retain and enjoy the beneficial interest" of the cash it improperly withheld, a constructive trust is appropriate equitable relief, and if the cash cannot be traced because VALIC has disposed of it, disgorgement of the proceeds is

appropriate.  *See Id.*

Again, the Court should not review or decide this issue in the first instance, particularly since – to the extent Plaintiffs have not adequately asserted a claim for equitable relief in their operative complaint – they must be given leave to amend.

## VII.  <u>The District Court Erred In Denying Leave To Amend</u>

VALIC argues the district court properly denied leave to amend because Plaintiffs did not amend their complaint after VALIC filed its first motion to dismiss.  (VALIC Br. 43).  If contesting a motion to dismiss, instead of filing an amended complaint, is adequate to deny leave to amend, then the "liberal" standard for amending under F.R.C.P. 15(a)(2) is actually draconian.  This is not the law.  And, of note, VALIC's first motion to dismiss was denied as moot.  Plaintiffs were surely under no obligation to amend their complaint after Defendants lost their first motion (albeit on technical grounds).

Moreover, Plaintiffs alleged equivocation on how they might amend the complaint – in the event the Court finds in VALIC's favor on one or more of the substantive issues decided below – is a necessary consequence of the law's uncertainty.  Still, Plaintiffs have clearly stated ways in which they could, if necessary, amend the complaint to address any potential deficiencies.  These include: (1) add a claim for knowing participation in a fiduciary breach (regardless of whether VALIC was a party in interest); (2) allege VALIC became a party in

interest – by virtue of the service provider agreement or otherwise -- prior to the annuity contract becoming effective;[4] (3) add an allegation that the transfer of assets and imposition of the termination fee violated § 1106(a)(1)(D) and was a separate transaction because VALIC required Plaintiffs to sign a transition agreement that included a release of claims as a condition of releasing the Plan's assets;[5] (4) add allegations further detailing VALIC's exercise of discretion in assessing the termination fee; and (5) add allegations in further support of Plaintiffs claim for injunctive relief.  A more complete description of additional allegations and potential claims, with references to the record, is set forth in

---

[4] VALIC argues vigorously that Plaintiffs are bound by the allegation in their original complaint that Markham hired VALIC "effective May 18, 2023." ROA.15.  The complaint does not unambiguously allege when the contracts were signed.  The SPA in Plaintiffs' files is unsigned, and the SPA attached to VALIC's motion is signed only by Markham and appears to be dated May 10.  ROA.562. When an exhibit attached to a complaint contradicts an allegation, the exhibit generally controls.  *See United States ex rel Riley v St. Luke's Episcopal Hosp.*, 355 F.3D 370, 377 (5th Cir. 2004).  Regardless, an amended complaint can contradict an earlier complaint, particularly when the contradiction is explained, *e.g.*, Plaintiffs made a mistake to the extent they suggested the SPA was executed on May 18 because the SPA presented by Defendants appears to be dated May 10. *PAE Gov't Services, Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007) ("there is nothing in the [F.R.C.P.] to prevent a party filing successive pleadings that make inconsistent or even contradictory allegations.  Unless there is a showing of bad faith . . . inconsistent allegations are simply not a basis for striking the pleading."); *Stearn v. Select Comfort Retail Corp.*, 763 F.Supp.2d 1128, 145 (N.D. Cal. 2010) (contradictory allegations are a permissible when a party explains the contradiction).

[5] Plaintiffs can also allege this authority over the Plan's assets separately rendered VALIC a fiduciary under 29 U.S.C. § 1002(21)(i)(clause 2).

Plaintiffs opening brief. (Markham Br. 7-9, 45).

The district court erred in denying Plaintiffs' request for leave to amend.

**VIII.** <u>**The Court Should Enforce ERISA's Plain Meaning Even In The Face Of Policy Disagreements**</u>

Here is the non-textual mess VALIC asks this Court to make of the ERISA statute.

Despite the language of § 1002(21) – defining a fiduciary as one who exercises discretion, authority, or possesses discretionary authority – a provider is not a fiduciary if the discretion to set its own fee is cabined between 0 and 99% (or 0 and 80% or some other, undetermined, range).  A provider *is* a fiduciary, however, if it has a discretion over a fee variable.

The definition of party in interest includes future fiduciaries, counsel, employees, employers, and unions (all of whom might provide services to establish a plan), but not *future* service providers (the ones most likely to provide such services).  The single phrase "a person providing services to such plan" means existing providers, but not new providers, except for new covered providers of welfare plans, but not new covered providers of pension plans.

The term "transaction" in 29 U.S.C. § 1106(a) spans the entire length of the relationship, but causing a new provider to engage in this lengthy transaction is not a transaction involving a party in interest, though they provide services throughout the transaction, since the provider was not providing services before the transaction

began.

The policy justification for these contortions is that forcing service providers to rely on the § 1108 exemption will make them too easy to sue, and thus make the market less efficient and more costly for plans. But "ERISA plans engage in transactions nominally prohibited by § 1106 all the time, while also taking steps to comply with ERISA by relying on one or more of the many exceptions under § 1108." *Teets v. Great-West Life & Annuity Co.*, 921 F.3d 1200, 1222 (10th Cir. 2019) (cleaned up), citing.

There is no evidence that service providers avoid renewing contracts with plans because of some enhanced legal risk associated with a renewal that did not exist with the initial contract. Service contracts are renewed routinely with no undue concern for §1106(a)'s prohibitions. The Court should not indulge the fiction that service providers subject to the presumption of a § 1106 prohibition will find it too risky to rely on the exemption in § 1108. Almost 50 years of experience on ERISA contract renewals exposes that as nonsense. As for initial contracts, VALIC described *itself* as a "covered service provider" subject to ERISA in its standard pension plan disclosures to Plaintiffs, even though the negotiation concerned an initial contract. VALIC's contention here, that its initial contracts are not subject to § 1108, is a litigation position, not a business one.

The contortions to ERISA advocated by VALIC and its amici are not for the

26

benefit of small business owners. They are for the benefit of large and sophisticated service providers opposed to the notion that ERISA did away with the arms-length standard of conduct for prohibited transactions. Their advocacy is driven, not by ERISA's text, but by a dislike for class actions and ERISA's functional fiduciary and prohibited transaction provisions.

## CONCLUSION

"Taxes are what we pay for civilized society." *Compania General de Tabacas de Filipinas v. Collector of Internal Revenue*, 275 U.S. 87, 100 (1927) (Holmes, J. dissenting). 401(k) plans help workers and small business owners save for retirement by deferring taxes. It is a trade-off. If ERISA is construed such that service providers can siphon off savings with excessive fees, then there will be less savings for the worker now and less taxes for the government later. It makes no difference if the excessive fees are negotiated at arms-length. Both the worker and civilized society will still suffer at the expense of the well-heeled financial firm. ERISA is for the employees' retirement income security. In this arena, financial firms come second. They must satisfy themselves with the reasonable, 29 U.S.C. § 1108(b)(2)(A), and forego the last possible penny.

Plaintiffs ask that the Court reverse the district court's judgment and remand the case for further proceedings.

Respectfully submitted,

_____/S/ Chris Baker_____
Chris Baker
Baker Curtis & Schwartz, PC
1 California Street, Suite 1250
San Francisco, CA 94111
(415) 433-1064

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2023, I electronically filed the foregoing brief with the Clerk of the Court for United States Court of Appeals for the Fifth Circuit via the NextGen CM/ECF (PACER) filing system, which will send out a notice of such filing to all registered NextGen CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


                    /S/ Chris Baker
                    Chris Baker
                    Baker Curtis & Schwartz, PC
                    1 California Street, Suite 1250
                    San Francisco, CA 94111
                    (415) 433-1064

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 6,482 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word (Microsoft Office 2016) in 14-point Times New Roman font.

/S/ Chris Baker
_____