# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
December 14, 2023
Lyle W. Cayce
Clerk

No. 22-20540

D.L. Markham DDS, MSD, Incorporated 401(k) Plan; D.L. Markham DDS, MSD, Incorporated, *as plan administrator*,

>*Plaintiffs—Appellants*,

versus

Variable Annuity Life Insurance Company; Valic Financial Advisors, Incorporated,

>*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-974

_____

Before Clement, Haynes, and Oldham, *Circuit Judges*.

Haynes, *Circuit Judge*:

Plaintiffs D.L. Markham DDS, MSD, Inc. and D.L. Markham DDS, MSD, Inc. 401(k) Plan appeal the district court's dismissal of their claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). For the reasons set forth below, we AFFIRM.

## I. Background

David Markham, DDS and Luminita Markham, DDS are a married couple who own a small dental practice, D.L. Markham DDS, MSD, Inc.

No. 22-20540

("Markham"), in Auburn, California. In January 2017, Markham established its employee pension benefit plan, D.L. Markham DDS, MSD Inc. 401(k) Plan (the "Plan"). Markham is the Plan's sponsor, administrator, and named fiduciary.

Variable Annuity Life Insurance Company ("VALIC") is an insurance corporation that specializes in tax-qualified retirement plans. In May 2018, Markham hired VALIC to maintain the Plan on VALIC's retirement platform. Markham selected the Portfolio Director Group Fixed and Variable Deferred Annuity Contract (the "PD Contract") as the Plan's annuity contract, under which VALIC served as the issuer and contract record-keeper of the Plan's assets. VALIC charged various fees for its services, including an Annual Administrative Service Fee between $2,500 and $12,000. The PD Contract also provided for a 5% surrender fee on transfers out of the contract for funds contributed in the previous 60 months.

In January 2020, Markham became dissatisfied with VALIC's services and notified VALIC that it intended to terminate the PD Contract. The parties engaged in several months of discussion regarding the terms of the termination, and VALIC informed Markham that the 5% surrender charge would apply to all of the Plan's assets. VALIC also notified Markham that the PD Contract contained exceptions to the surrender fee. The only potentially applicable exception provided:

> The surrender charge may be waived or reduced uniformly on all Participant Accounts for contracts issued under certain plans or arrangements which are expected to result in administrative cost savings. No reduction or waiver will be made that is unfairly discriminatory to any person.
>
> We may waive any withdrawal or surrender charge attributable to Purchase Payments received during specific periods of time, and under conditions and limitations set by Us. Any such

waiver will be made by Resolution of the Board of Directors. Notice of the right to surrender without charge will be mailed to the Contract Owner when such waiver is declared by the Board of Directors.

Markham subsequently retained legal counsel and requested a waiver of the surrender fee. In August 2020, VALIC informed Markham that it had decided to impose the fee. Later that month, Markham transferred all Plan assets from VALIC to a successor service provider's platform. VALIC retained a surrender fee of $20,703, approximately 4.5% of the Plan's assets.[1]

In January 2021, Markham and the Plan (collectively "Plaintiffs") initiated this class action suit in the Eastern District of California against VALIC.[2] Plaintiffs allege VALIC violated ERISA by (1) breaching its fiduciary duties and (2) engaging in a prohibited transaction with a party in interest.

In March 2021, VALIC filed a motion to transfer and a motion to dismiss. A year later, the Eastern District of California transferred this case to the Southern District of Texas under 28 U.S.C. § 1404(a) and denied VALIC's motion to dismiss as moot. VALIC subsequently filed a renewed motion to dismiss both counts of the complaint pursuant to Rule 12(b)(6). The district court concluded: (1) Plaintiffs' claim for breach of fiduciary duty failed because VALIC was not a fiduciary; and (2) Plaintiffs' prohibited-transaction claim failed because VALIC was not a "party in interest" when it entered the PD Contract and the collection of the surrender fee was not a

---

[1] Under the PD Contract, 10% of the Plan's assets were exempt from the surrender fee. The surrender fee of 4.5% was 5% of the remaining non-exempt portion.

[2] Plaintiffs also brought suit against VALIC Financial Advisors, Inc. and VALIC Retirement Services Company. We address the former as part of VALIC. However, the latter is not a party to this appeal because Plaintiffs do not contest the district court's dismissal of all claims against it.

separate transaction. Accordingly, the district court granted VALIC's motion to dismiss and denied Plaintiffs' request for leave to amend.

## II. Jurisdiction and Standard of Review

The district court properly exercised jurisdiction under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. On appeal, we have jurisdiction over the district court's final judgment under 28 U.S.C. § 1291.

We review a district court's grant of a motion to dismiss for failure to state a claim de novo and apply the same standards as the district court. *See Del-Ray Battery Co. v. Douglas Battery Co.*, 635 F.3d 725, 728–29 (5th Cir. 2011). "We review [the] denial of leave to amend for abuse of discretion." *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018).

## III. Discussion

Plaintiffs raise four issues on appeal: (1) whether VALIC acted as a fiduciary when it collected the surrender fee; (2) whether VALIC was a party in interest when it entered into the PD Contract; (3) whether VALIC's collection of the surrender fee constitutes a separate transaction; and (4) whether the district court abused its discretion in denying Plaintiffs' request for leave to amend their complaint. We consider each issue in turn.

### A. Fiduciary Act

ERISA imposes liability on "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries." 29 U.S.C. § 1109(a). In cases involving breach of fiduciary duty, the threshold issue is whether the service provider "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). In relevant part, ERISA provides:

No. 22-20540

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "We give the term fiduciary a liberal construction in keeping with the remedial purpose of ERISA." *Reich v. Lancaster*, 55 F.3d 1034, 1046 (5th Cir. 1995) (internal quotation marks and citation omitted) (cleaned up). However, a fiduciary duty is context specific, arising only to the extent a person acts in an administrative, managerial, or advisory capacity to an employee benefits plan. *See Pegram*, 530 U.S. at 225–26.

We have not previously addressed whether the acceptance of previously bargained-for compensation constitutes a fiduciary act under ERISA. Plaintiffs argue VALIC acted as a fiduciary because it had "unlimited discretion" over the surrender fee and used such discretion when it declined to waive the fee. But the notion that a party's right to waive payment makes it a fiduciary is inconsistent with the reality that any private entity or person can always decline or reduce a payment owed to them under a contract; indeed, it makes little sense to suggest that any private entity, including a fiduciary, must demand all sums allowed by the contract.[3]

Our caselaw quite clearly shows that a party must have discretion over more than the acceptance of payment to act as a fiduciary. In *American Federation of Unions, Local 102 Health & Welfare Fund v. Equitable Life Assurance Society of the United States*, we held that a plan administrator acted as a fiduciary even though a contract set the administrator's compensation rate at 12% of claims paid. 841 F.2d 658, 661, 662–63 (5th Cir. 1988). We

---

[3] Even fiduciaries can get paid quite a bit (example: attorneys).

reasoned that the plan administrator acted as a fiduciary because he had discretion over which claims would be paid and could thereby increase his total compensation. *Id.* at 662–63. VALIC, by contrast, did not have the ability to manipulate its total compensation; it did not control the value of assets transferred to the Plan or whether Markham would trigger the surrender fee by prematurely transferring funds. Further, to the extent that it had any discretion over the fee, VALIC "did not *exercise* that authority with respect to the only transaction at issue in this case." *Tiblier v. Dlabal*, 743 F.3d 1004, 1008–09 (5th Cir. 2014) (emphasis in original). VALIC merely charged the agreed-upon surrender fee, collecting 5% of the non-exempt Plan assets per the PD Contract.

Our sister circuits that have considered this issue have held that accepting predetermined compensation does not constitute a fiduciary act. *See, e.g.*, *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 655 (9th Cir. 2019) ("[T]he service provider cannot be held liable for merely accepting previously bargained-for fixed compensation." (internal quotation marks and citation omitted)); *Danza v. Fidelity Mgmt. Tr. Co.*, 533 F. App'x 120, 126 (3d Cir. 2013) ("A service provider cannot be held liable for merely accepting previously bargained-for fixed compensation that was not prohibited at the time of the bargain."). We agree with these holdings. Accepting predetermined compensation that was agreed to by a plan's named fiduciary does not constitute control over the management of a plan or disposition of the plan's assets. Here, although VALIC had discretion to waive the fee, the PD Contract set a maximum surrender fee and gave VALIC the right to retain it. Thus, VALIC merely adhered to the PD Contract by collecting the previously bargained-for compensation.

Accordingly, we join the majority of circuits in holding that the collection of a contractually predetermined fixed fee does not constitute a

fiduciary act under ERISA. We thus affirm the district court's dismissal of Plaintiffs' claim for breach of fiduciary duty.

### B. "Party in Interest" for Initial Contracts

ERISA prohibits fiduciaries from knowingly "engag[ing] in a transaction" for the "furnishing of goods, services, or facilities" with a "party in interest." 29 U.S.C. § 1106(a)(1)(C).[4] In relevant part, ERISA defines "party in interest" as "a person providing services to such plan." *Id.* § 1002(14)(B). Plaintiffs contend the PD Contract was a prohibited transaction because VALIC was a party in interest when it entered the agreement. We disagree; "a person providing services to such plan" is limited to entities that have already began providing services to the plan at issue.

#### 1. *The Plain Text*

Plaintiffs and amicus curiae, the Secretary of Labor, argue that "a person providing services to such plan" under 29 U.S.C. § 1002(14)(B) includes *all* service providers, regardless of whether they have begun providing services to the particular plan at issue. But this interpretation contradicts the plain reading of the text. The word "providing," used here as a present participle, most commonly describes a person who is *currently* providing services. Further, the modifying phrase "to such plan" limits the definition to entities providing services to the plan at issue—not service providers in general.

---

[4] A plaintiff may seek relief from a nonfiduciary party in interest to a contract barred by § 1106(a). *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245 (2000). Thus, Plaintiffs may pursue this claim despite VALIC not being a fiduciary to the Plan.

The Secretary relies on 34 U.S.C. § 12421(3) to argue that "providing" does not require a preexisting relationship. This statute denotes proper recipients of grants such as "proposals providing services to culturally specific and underserved populations." 34 U.S.C. § 12421(3). But the use of "proposals" denotes future use, referring to proposals that *intend* to provide services. No such terminology is included in 29 U.S.C. § 1002(14)(B). Thus, entities that are not already providing services to a particular plan at the time of contracting with that plan, such as VALIC with respect to the Markham Plan, are not "parties in interest" under ERISA.

The relevant caselaw supports this reading of § 1002(14)(B). In *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, the Supreme Court recognized that "Congress defined 'party in interest' to encompass those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." 530 U.S. 238, 242 (2000); *see also Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996) (explaining that § 1106(a) prohibits "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length"). When a party does not have a preexisting relationship with a plan, there is less risk that a fiduciary would show such party favoritism over the plan's beneficiaries. In line with this reasoning, the Third and Tenth Circuits have held that "a person providing services to such plan" includes only providers with a preexisting relationship with a plan. *Danza*, 533 F. App'x at 125–26 ("Negotiation between such unaffiliated parties does not fall into the category of transactions that [§ 1106(a)] was meant to prevent."); *Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021).[5]

---

[5] Plaintiffs rely on *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) to claim the Eighth Circuit has adopted their interpretation of "party in interest." But the

Plaintiffs contend that reading § 1106(a) with the relevant exemptions supports their argument that "party in interest" refers to future service providers. Under § 1108, contracts with parties in interest are permissible for "services necessary for the establishment . . . of the plan." 29. U.S.C. § 1108(b)(2)(A). Plaintiffs argue this exemption would be meaningless if "party in interest" did not include future service providers. But this argument ignores the numerous other definitions of "party in interest" under ERISA, such as employers and employee organizations. *See* 29 U.S.C. § 1002(14)(A)–(I). These parties may enter a contract with a plan fiduciary for services necessary to establish the plan or seek to amend an existing contract, to which the exemption under § 1108 could still apply. Thus, the § 1108 exemptions do not require an expansive reading of "a person providing services to such plan."

### 2. *Department of Labor Regulations and Congress's 2021 Amendment to ERISA*

Plaintiffs and the Secretary argue that Department of Labor ("DOL") regulations and Congress's 2021 amendment to ERISA show that "a person providing services to such plan" does not require a preexisting relationship. In 2012, the DOL issued regulations interpreting § 1108(b)(2). Reasonable Contract or Arrangement Under Section 408(b)(2)-Fee Disclosure, 77 Fed. Reg. 5632 (Feb. 3, 2012). The regulations state that, in order to qualify for an exemption from § 1106(a), pension plan service providers must meet specific disclosure requirements. *Id.* The disclosure requirements are not at

---

transactions at issue in *Braden* were revenue sharing payments to a trustee that had already been providing services to the plan. *Braden*, 588 F.3d at 600. Thus, the Eighth Circuit did not address whether a service provider is a "party in interest" *before* it has provided services to a plan. *See id.* at 600–03.

issue here, but the preamble to the regulations explains that *all* service contracts are prohibited transactions and must fall under an exemption. *Id.*

Several years later, Congress passed an amendment to ERISA in the Consolidated Appropriations Act of 2021. Pub. L. No. 116-260, Div. BB, Title II, § 202(a), 134 Stat. 1182, 2894 (2020) (codified as amended at 29 U.S.C. § 1108(b)(2)(B)). The amendment altered § 1108(b) to include that "[n]o contract or arrangement for services between a [group health plan] and a covered service provider, and no extension or renewal of such a contract or arrangement, is reasonable within the meaning of this paragraph unless the [disclosure requirements] are met." 29 U.S.C. § 1108(b)(2)(B). This language regarding group health plan providers mirrors the DOL regulations regarding pension plan providers. *Compare* 29 U.S.C. § 1108(b)(2)(B) *with* 77 Fed. Reg. 5632; *see also* 29 C.F.R. § 2550.408b-2(c)(1)(i). Plaintiffs and the Secretary argue that, because Congress adopted nearly identical language as the DOL regulations, it intended the same broad scope and therefore requires all service providers of group health plans to make disclosures. Thus, all "covered service providers" are "parties in interest" because the disclosure requirements apply only to transactions prohibited under § 1106(a). Plaintiffs and the Secretary contend that, if a new service provider for a health plan is a "party in interest," then so is a new service provider for a pension plan.

Even assuming Congress intended to adopt the same disclosure requirements for group health plans as those imposed on pension plans under the DOL regulations, Plaintiffs and the Secretary lack convincing evidence that Congress intended to broaden the definition of "party in interest." Indeed, the amendment makes no reference to "party in interest." *See* 29 U.S.C. § 1108(b)(2)(B).

Further, the 2021 amendment altered disclosure requirements solely for group health plan providers—not pension plan providers. This court has previously acknowledged that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it from another. *Miss. Poultry Ass'n, Inc. v. Madigan*, 31 F.3d 293, 301 (5th Cir. 1994) (en banc). If Congress intended to apply the disclosure requirements to pension plans, it could have amended the appropriate section to do so. Likewise, Congress could have amended the statute to clarify the meaning of "a person providing services to such plan" under § 1002(14)(B). The amendment of an unrelated section of ERISA does not shed light on the meaning of § 1002(14)(B), nor does it provide sufficient evidence that Congress intended to change such meaning.

Finally, Plaintiffs argue the statute is ambiguous, and therefore we should give the DOL's interpretation deference under *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984). But *Chevron* deference is inappropriate where the text and structure of the statute "unambiguously foreclose" an agency's interpretation. *Chamber of Com. v. U.S. Dep't of Lab.*, 885 F.3d 360, 369 (5th Cir. 2018). As discussed above, the text of the statute unambiguously limits "a person providing services to such plan" to entities currently providing services to a specific plan. *Chevron* deference is thus inappropriate here.

Because VALIC was not yet providing services to the Plan, we conclude that VALIC was not a "party in interest" under § 1106(a) when it entered the PD Contract.

### C. "Transaction" Under § 1106(a)

Plaintiffs alternatively argue that VALIC's subsequent collection of the surrender fee was a prohibited transaction with a "party in interest." We agree VALIC was likely a "party in interest" when it collected the fee

because it had been providing services to Plaintiffs for several years. However, Plaintiffs' claim fails because the collection of a contractually determined fee is not a "transaction" under § 1106(a).

ERISA prohibits fiduciaries (such as Markham) from "caus[ing] the plan to engage in a transaction . . . [with] a party in interest." 29 U.S.C. § 1106(a)(1)(C). Reading § 1108 in conjunction with § 1106(a) helps determine the meaning of "transaction" as relevant here. As discussed above, § 1108 provides several exemptions for contracts that § 1106(a) would ordinarily prohibit. Under the exemptions, a party engages in a "transaction," inter alia, by "[c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan." 29 U.S.C. § 1108(b)(2)(A). This definition suggests that "transaction" refers to the establishment of rights and obligations between parties—not the payment of funds pursuant to an existing agreement.

Reading "transaction" to exclude subsequent payments is consistent with the aims of § 1106(a). As discussed above, § 1106(a) limits scrutiny to contracts involving preexisting relationships in order to prevent favoritism at the expense of plan beneficiaries. *See Harris Tr.*, 530 U.S. at 242. If "transaction" applied to contractual payments, plaintiffs could circumvent this limitation to upend contracts that were negotiated at arm's length and, basically, never pay what is owed.[6] The Secretary contends that this interpretation would contradict the purpose of ERISA by allowing

---

[6] A similar issue arose in *Chavez v. Plan Benefit Services, Inc.*, where the plaintiffs admitted the defendant was not a party in interest at the time of the initial contract and therefore challenged the subsequent payments. No. AU-17-CA-00659-SS, 2018 WL 6220119, at *3 (W.D. Tex. Sept. 12, 2018). The court found that fee collection was not a separate "transaction" when, as here, "the contractual obligation to pay those fees arose before [the collecting] party assumed party in interest status." *Id.* at *4.

unreasonable service contracts to go on without scrutiny. But allowing separate claims for any contractual payment would lead to an influx of litigation at odds with the limitations of § 1106(a) and lead to failing to pay entities that do work, which is contrary to the core of our business world in America.

Plaintiffs rely on the Fourth Circuit's holding in *Peters v. Aetna Inc.*, 2 F.4th 199 (4th Cir. 2021) to argue that subsequent payments are separate transactions under § 1106(a). In *Peters*, the court determined that a service provider was not a party in interest at the time of the contract signing. *Id.* at 239–40. However, the court held the service provider "could be" a party in interest at a later point because it "provided services to the plan at the time [its administrative] fees were paid[.]" *Id.* (alterations in original) (internal quotation marks and citation omitted). The allegations in *Peters* are distinct from those here. There, the defendant did not merely assess a fee in accordance with a contract, but instead directly violated the terms of the agreement by charging administrative fees to the plan and its beneficiaries rather than the plan administrator. *Id.* at 212–13. Thus, the proper takeaway from *Peters* is that a contract *violation* is a separate transaction rather than a continuance of an initial agreement. Plaintiffs make no allegations of a contract violation here.

Because "transaction" under § 1106(a) does not include payments in accordance with a contract, we conclude that VALIC's collection of the surrender fee was not a prohibited transaction.

### D. Leave to Amend

Under Federal Rule of Civil Procedure 15(a), a trial court "should freely give leave [to amend] when justice so requires." Although leave to amend is not automatic, "a district court needs a substantial reason to deny a party's request for leave to amend." *N. Cypress Med.*, 898 F.3d at 477

(internal quotation marks and citation omitted). Denial of leave to amend may be appropriate in cases of undue delay. *Id.* at 478.

The district court did not abuse its discretion in denying Plaintiffs leave to amend due to undue delay. "Although Rule 15(a) does not impose a time limit for permissive amendment, at some point, time delay on the part of a plaintiff can be procedurally fatal." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (internal quotation marks and citation omitted). In these cases, a plaintiff must show that the delay is "due to oversight, inadvertence, or excusable neglect." *Id.* (quotation omitted). Here, Plaintiffs filed their complaint in January 2021 and VALIC filed its initial motion to dismiss in March 2021. The Eastern District of California transferred the case nearly a year later. After transfer to the Southern District of Texas, VALIC filed another motion to dismiss with the same arguments. As the district court noted, Plaintiffs were aware of the potential deficiencies in their complaint for over a year yet mentioned "new" allegations and "new" claims only in response to the second motion. The district court also noted that Plaintiffs provided no excuse for their delay in seeking leave to amend, and that granting leave would be an inefficient use of the court's resources. Thus, the district court provided a substantial reason to deny leave to amend. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864–65 (5th Cir. 2003) (concluding the district court did not abuse its discretion in denying leave to amend the complaint because plaintiffs had not raised any facts that were not previously available and made a "strategic" decision to delay amending the complaint).

Further, the district court did not abuse its discretion because Plaintiffs' motion for leave provided insufficient detail of their new allegations. We have previously held that "a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021);

*see also Lewis v. Smith*, No. 19-30689, 2022 WL 10965839, at *5 (5th Cir. Oct. 19, 2022). As the district court noted, "Plaintiffs' list of new allegations [was] generic and equivocal." Indeed, Plaintiffs listed only vague allegations and did not provide sufficient facts that would support their claims if the district court granted leave. Accordingly, we affirm the district court's denial of leave to amend.

## IV.    Conclusion

For the forgoing reasons, we AFFIRM the district court's dismissal of Plaintiffs' ERISA claims and denial of leave to amend.